ROGERS, PUBLIC ADMINISTRATOR, *v.* HOBERLEIN.

A Public Administrator, having administration of an estate, continues such administration after the expiration of his term of office, and until his authority is directly set aside or indirectly revoked by another appointment.

To vest the incoming administrator with title to the estate, there must be a grant of administration to him; the mere handing over the papers by the old administrator to the new is not sufficient.

APPEAL from the District Court of the Twelfth Judicial District, County of San Francisco.

This was an action in the name of the plaintiff, as Public Administrator of the County of San Francisco, to recover from the defendant certain rents due by virtue of a lease from Samuel Flower, former Public Administrator of said county, and as such in charge of the estate of Auguste Deck, deceased.

In December, 1855, the Probate Court of the City and County of San Francisco, by a simple order, and without the presentation of a petition, directed letters of administration to issue to Samuel Flower, the then Public Administrator of that county, upon the estate of A. Deck, deceased. Flower's term of office expired in November, 1856, and he was succeeded by the plaintiff. Flower delivered to the plaintiff, as his successor, all the papers and property of said estate, but no

Rogers *v.* Hoberlein.

order of the Probate Court of that county was made directing letters to issue to said plaintiff, nor did any ever issue.

The question presented by the record is, whether a Public Administrator, having administration upon an estate, continues such administration after the expiration of his term of office, or whether the administration follows the office into the hands of the succeeding incumbent, who may sue without obtaining a grant of administration on the particular estate.

Plaintiff had judgment in the Court below, and the defendant appealed.

*Heydenfeldt* for Appellant.

1. The first assignment of error is, that the declaration is insufficient to support the judgment.

The suit is upon a lease made between defendant and Samuel Flower, *as* Administrator of Deck.

The contract is either personal to Flower, or in his representative capacity. In either case, there is no right in the plaintiff to recover.

If " personal," then the case shows no assignment by Flower to the plaintiff.

If representative, then it is insisted that Flower is still Administrator of Deck, and plaintiff is not.

Plaintiff has not taken out letters of administration, nor had any grant of administration by order of the Probate Court.

Flower has never been removed, nor had his letters revoked, nor has he resigned.

In Beckett *v.* Selover, 7 Cal. 215, this Court held that letters of administration, or an order of the Probate Court appointing an Administrator, was essential ; and so Williams on Executors, and all the authorities, hold that letters are the title of the Administrator to the estate, without which he has no right.

In creating the office of Public Administrator, the law intended only to add one more to a class to whom letters were to be granted.

See Wood's Digest, p. 396, art. 2250, where the law declares— " *Administration shall be granted,*" &c., and where the Public Administrator is the eighth in a classification containing ten classes. Imme-

8

diately preceding this section is given the form of letters of administration.

It is insisted, upon a proper construction of this statute, that the Public Administrator does not hold the administration of estates by virtue of his office, but by virtue of his letters of administration.

He obtains the letters by virtue of his office, as being one of a class entitled to administer; but having once obtained letters, he holds like any other Administrator, by virtue of his letters, and is entitled to continue in the administration until the estate is closed up, independent of his tenure of office as Public Administrator.

Among the classes entitled to administer is "ninth; creditors." Now if letters be granted to a creditor, and he immediately pays his own debt and thus ceases to be a creditor, does he lose his right to administer; and could another creditor come in and demand a revocation of his letters, and an issue of letters to himself?

And yet this would be strictly analogous to the claim set up here, that the expiration of the office of Public Administrator takes away from the late incumbent the right to administer by virtue of his letters.

Such was certainly not the intention of the Legislature. Two different Acts show what was the legislative exposition.

The Act of March 8, 1851, a special Act for San Francisco county, provides for an immediate election, and that after the election the PRESENT *incumbent* should hand over everything to his successor.

The Act of April 15, 1851, provides for similar elections throughout the State, and again directs "the *present* incumbents shall turn over, etc., to their successors."

Nothing can be clearer than the inference, that without the provisions above cited, the incumbents would have held, by virtue of their letters, even after their terms expired; and it may possibly admit of question whether their rights were not of such a character that the Legislature could not direct them.

If, as is contended here, administration exists in the plaintiff, then we have the anomalous proposition that it exists in two persons by totally different titles, originating at different times; for if Flower was administrator, he was not so by virtue of his office, but by virtue of an order of the Probate Court.

Rogers v. Hoberlein.

Even then, if his office ceased, his powers under the order did not cease, and his letters have not been revoked. The grant of letters is to Flower, not to the Public Administrator, and although he is called Public Administrator, this is only *descriptio personæ*.

His letters granted to him by name cannot enure to his successor in office. It is his evidence of title, and cannot be evidence of title in another; it is a personal trust, and must remain so until revoked or resigned.

*Daniel Rogers* for Respondent.

The Public Administrator is a public officer of the particular county for which he may be elected.

It is necessary to examine briefly the different Acts of the Legislature in relation to this office, in order to find out the laws applicable to it now, and what are the duties and powers defined by them.

In the law of 1850, in relation to the estates of deceased persons, in chapter 14, section 304, the appointment of a Public Administrator was invested in the Probate Court of each county. This appointment was made by a mere entry upon its minutes.

By this law it is evident that there was no intention to invest him with the ordinary powers of an administrator of a particular estate, because his duties are particularly defined, which were—the *preservation* of estates in particular instances, and the collection of the assets.

By virtue of his office he could not receive general letters, because he was not named in section 52 as one to whom letters could issue. Under this law, the Public Administrator took charge of some estates and held them for their mere preservation, in his official capacity; and hence, upon the expiration of his term of office, his duties and powers ceased and devolved upon his successor. March 8th, 1851, by a special law applicable only to the County of San Francisco, this office was made elective, and it was made the duty of the (then) present Administrator to deliver over to his successor all papers, assets, etc. This was supplied by that of April 15th, 1851, making the office elective in each of the counties. This law retained the section requiring the *present* Administrator to deliver over to his successor the property of the estates. The general law of 1850 was repealed by that

Rogers *v.* Hoberlein.

passed May 1st, 1851.   In section 52 of this law, the Public Admin-
istrator is named as one who is entitled to receive general letters of
administration on particular estates; but that section (310) in the law
of 1850, defining the duties of the Public Administrator, is omitted.
Many of the sections of the law of April 15th, 1851, in relation to the
Public Administrator, have been amended, and are repealed; but sec-
tions 6 and 7 remain.

It is difficult to account for the presence in section 6 of this law of
the word "*present*," except as arising from bad legislation; because it
is only by virtue of this section that it was made incumbent upon the
Public Administrator to deliver to his successor anything pertaining to
the estates held by him.   Has this section expired by its own limita-
tion, or is it still in force?   If the section is to receive a strict con-
struction, it has undoubtedly executed itself, because the word "pres-
ent" can only be construed as referring to the Public Administrator
then holding the office; but if, on the other hand, this Court construes
the word as surplusage, and that it was the intention of the law-makers
to retain the section, it may not then be difficult to solve the question
involved in this case.

The only sections particularly defining the duties of the Public
Administrator are sections 88, 304 and 305.   It seems he holds the
estates committed to his charge by virtue of these sections simply as a
special Administrator.   Under section 52, he receives letters of admin-
istration because he is the Public Administrator—not because of any
connection with the particular estate; and upon the expiration of his
official term, his duties and powers as a public officer cease, and the
further execution of the trust devolves on his successor in office.

If the Administrator is a public officer, giving a bond and taking an
official oath, why is there not on the expiration of this office a termina-
tion of his duties and powers?   There is no law particularly applica-
ble to him whereby he is exempted.

With all public officers, their public functions cease with the expira-
tion of their office, with but one exception, that of the Sheriff; and in
his case there is an express provision of law.

If then, there is no provision of law containing his connection with
the administration of a trust after the expiration of his official term,

there is, by mere operation of law, not only a change of administration but a legal transfer of his letters, and all assets in his possession.

*Wm. W. Crane* for Respondent.

I. The various provisions of the statute all indicate that *an office* was created, with distinct duties attendant upon it. If the proposition of the appellant be true, the Legislature would merely have enacted that a Public Administrator shall be elected in each county, prescribing his term ; then the general statutes relative to the estates of deceased persons would point out his class, and regulate all his duties ; but it goes further, and creates an office as distinct and necessary to the functions of government as that of District Attorney, County Treasurer and others.

If the duties of the Public Administrator appertain to *an office*, as contended for, then we submit that the general rule governing the rights and duties of incumbents in office must prevail in this as in other cases, *viz :* that as to the incumbent *personally*, they are dependent upon his tenure of office, commencing and ending with it.

The separation of the incumbent from office is recognized in the case of The People *v.* Langden, 8 Cal. 1.

The condition of his bond is, that he will account for and pay over all moneys and property that may come into his hands, " *as such Public Administrator.*" Now, if after he ceases to be Public Administrator and becomes a private one, he receives money due the estate and misapplies it, his sureties would not be liable.

II. The appellant urges that the Public Administrator did not hold the estate of Deck by virtue of his office, but by virtue of the letters granted to him. This is not altogether true. It is too broadly stated. He is entitled to hold both by virtue of his office and the letters. He could not demand the letters unless he was Public Administrator, nor could he hold the estate unless in the first instance acquired by letters.

The case of Beckett *v.* Selover merely decides that there must be a judicial grant of administration in each case, *in the first instance ;* but it does not decide that the Public Administrator thereby becomes invested with a personal title which continues until the estate is closed. The granting of letters is only a statutory mode of bringing the estate

within the control of the office ; and whoever at the time is the incumbent performs the duties of the office.    Most of the State and County officers take property into their possession by means of certain legal forms : for instance, the mode in which County Treasurers acquire school moneys from the State.    (Laws of 1855, p. 230.)

The office always continues, though the incumbent may be different. If the title of a succeeding Public Administrator is questioned, he is only obliged to exhibit the grant of letters to his predecessors and his own commission to make out a *prima facie* case.

The learned counsel for the appellant says in his brief: " Now if letters be granted to a creditor, and he immediately pays his own debt and thus ceases to be a creditor, does he lose his right to administer, and could another creditor come in and demand a revocation of his letters, and an issuance of letters to himself ? and yet this would be strictly analogous to the claim set up here."

In the first place, all the persons authorized by the statute to receive letters except the Public Administrator, are so authorized because of a *personal* connection with or interest in the estate.

*Secondly.* Under our statutory system, a creditor cannot pay his debt until the estate is wound up, and a decree of distribution entered ; and the contingency suggested could not arise.

III. It is urged that the administration does not pass to the successor in office because of the *absence* of an express provision to that effect.

If the theory urged above be correct, *viz :* that all property, papers, money, etc., attend the office and not the incumbent, then no enactment is necessary ; such seems to have been the Legislative understanding.    It will be seen that no such provision is made in reference to the County Clerks, (Woods' Digest, p. 88) District Attorney, (p. 64) Coroner, (p. 112) Assessor, (p. 55) Treasurer, (p. 712) Clerk of Supreme Court, nor Superintendent of Public Instruction.

BALDWIN, J., delivered the opinion of the Court—TERRY, C. J., concurring.

This case comes here upon a single point made by an agreed state of facts ; this is whether the Public Administrator of San Francisco

Rogers *v*. Hoberlein.

County, having administered upon an estate, continues such administration after the expiration of his term of office, or whether the administration follows the office into the hands of the succeeding incumbent, who may sue without obtaining a grant of administration on the particular estate.   This question depends upon the construction of our statutes.   The first Act upon the subject of Public Administrators was passed in 1850.   (Acts of 1850, p. 403, ch. 14, section 304.) This Act provided that the Probate Court might, by an order entered on its minutes, appoint a Public Administrator for the County, who should hold office for one year, and until his successor was qualified. This Act defines the rights and duties of this class of public officers. Section 312 provides that, if at any time, letters testamentary or of administration be regularly granted on such estate to any other person, the Public Administrator shall, under the order of the Probate Court, account for, pay and deliver to the Executor or Administrator thus appointed, all the money, property, debts, papers, or other estate of the person deceased.   Section 317 provides that the Probate Court may at any time order the Public Administrator to account for, and deliver all the money and property of any estate in his hands to the heirs or to the Executor or Administrator regularly appointed.

It will be observed that nothing is said in this statute—which is the basis of all the legislation on the subject—about the handing over of papers, etc., to the succeeding Public Administrator.

The next Act is that of April, 1851.   (Acts of 1851, p. 206.) The first section of this Act provides that there shall be elected in and for each of the organized counties in this State a Public Administrator, who shall continue in office until his successor is qualified.   By section 6 it is provided that it shall be the duty of *the present Public Administrators* each to account for, pay over and deliver to his successor, within twenty days after he shall have been qualified, all moneys, property, etc., which may have come into his possession as such Administrator, or be held by him by virtue of his office.   Section 7 prescribes a penalty for non-compliance with section 6, against those *now holding the office*.   Section 305 of Act of May 1st, 1851, (Acts of 1851, p. 418) provides that the Public Administrator shall make a perfect inventory of all such estate taken into his possession, and

administer and account for the same as near as circumstances will permit, according to the law prescribing the duties of administration, subject to the control and direction of the Probate Court.

Section 52 of the general Act concerning estates of deceased persons (Acts of 1851, p. 434) prescribes the persons to whom administration shall be entitled in their order. 1st. To the surviving husband or wife. * * 8th. To the Public Administrator. 9th. Creditors. 10th. Any person or persons legally competent. Art. 2349, section 281 (Wood's Dig. 419) provides for the removal of any Executor or Administrator, etc.

In Beckett v. Selover, (7 Cal. 216) this Court held that the Public Administrator is not entitled to administer upon every estate, and there must be a judicial grant of administration to him in each particular case, of which his official commission is not proof; and he must show the grant of administration like every other Administrator.

It will be seen, from this review of the statutes, that it is nowhere provided that the Public Administrator shall hand over to the succeeding incumbent of the office the papers, or that the latter succeeds to the unfinished business of estates. By virtue of his office, it is true he is entitled to a grant of administration, as by virtue of his debt a creditor is entitled, but it does not follow from this that the grant is limited in time or by the existence of this relation. The statutes seem *ex industria* to exclude this idea. In one provision, the duty is imposed expressly, under a penalty, upon the then existing Public Administrators, to hand over the papers, etc.; and by other sections it is incumbent upon them to deliver the property, etc., to the Administrator regularly appointed.

It may have been the intention of the Legislature to confine the entire administration of an estate, once granted to a Public Administrator, to the person to whom the letters are granted; since it might lead to great confusion, and expense, and trouble, in shifting the administration to as many different hands as there should be Public Administrators. In this case a grant of administration was made to Flower, former Public Administrator; and no grant was made to Rogers, the plaintiff here. This was necessary, as held in Beckett v. Selover, to give him any title to the estate. The mere handing over the papers by Flower to him did not vest him with the title to sue in this case.

The main argument urged by the respondent against this view is, that as these powers and duties of the Public Administrator exist by virtue of his office, they must necessarily expire with the office.    But this depends upon the nature of the office, and upon the Act creating it.    At common law, a Sheriff was, after the expiration of his term, from a principle of convenience, considered in some respects as an officer ; he could finish some kinds of business which he had begun. And so it has been held in other States, that an Executor or Adminis-trator, after his resignation or removal, is to be treated, for purposes of settlement, remedies, etc., as Administrators in office.    We do not see that estates would not be as safe in the hands of the first incum-bent, as in those of his successor ; while many considerations of conve-nience and expedition in the settlement of estates are involved in the continuing of the management of them in the hands to which they were first committed.    At least, it would seem to be clear that the grant of administration must continue the authority and power of the grantee until it is directly set aside, or indirectly revoked by another appoint-ment.

Upon the agreed facts, therefore, we think the law is for the defendant.

Judgment reversed.