[L. A. No. 1636.   Department Two.—April 17, 1905.]

## COUNTY OF LOS ANGELES, Respondent, v. C. G. KELLOGG, Appellant.

ESTATES OF DECEASED PERSONS—LETTERS TO PUBLIC ADMINISTRATOR—COUNTY OFFICER.—A public administrator is a county officer; and, though he must obtain letters of administration of any particular estate upon which he is entitled to administer, as the source of his authority to act therein, he obtains the letters not as an individual, but by virtue of his office, and must comply with the statutory provisions regulating his administration of estates as such officer.

ID.—SALARY—PAYMENT OF COMMISSIONS INTO TREASURY—ACTION AFTER EXPIRATION OF TERM.—Where the public administrator is a salaried officer, and is required by statute to pay all commissions allowed by the superior court into the county treasury, if he continues voluntarily to act after the expiration of his term, instead of resigning and settling up partially administered estates, he can receive no private compensation therefor, and must pay all commissions thereafter received into the county treasury.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Waldo M. York, Judge.

The facts are stated in the opinion.

Leon F. Moss, for Appellant.

U. S. Webb, Attorney-General, J. D. Fredericks, District Attorney, and William P. James, Deputy District Attorney, for Respondent.

CHIPMAN, C.—This case is here on an agreed statement of facts and was begun under the provisions of section 1138 of the Code of Civil Procedure.   The facts, so far as it is necessary to state them, are as follows: Defendant was the public administrator of Los Angeles County for the term of

four years ending January 5, 1903; he received as compensation for his services during said term, and no longer, two hundred and fifty dollars per month, being the salary provided by law to be paid to him as public administrator; during his said term as public administrator he was appointed administrator of many estates, some of which were fully administered during his said term, and he paid into the treasury of the county, as required by law, all commissions allowed by the superior court in the administration of all said estates in which administration was completed during said term; he was appointed as administrator, at different times in 1902, of seven different estates and one in the year 1900, in all of which administration was continued by him after the term of his office had expired and was completed, in six of them in the latter part of the year 1903, and in two of them in the year 1904. In each estate at the close thereof he claimed, and the court allowed, in his final account a certain sum as his commissions, aggregating $4,857.72, in all of the said estates, which sum is now in his possession. It is stated "that said Kellogg has devoted a great deal of time and labor in the performance of his duties as administrator of said estates during the time which has elapsed since the expiration of his term of office, and prior to the allowance of said final accounts; and that he has not received any compensation for his services, as such administrator, which have been performed subsequent to the expiration of his said term of office." It also appears that his successor in office duly qualified and drew the salary allowed him by law during all the times mentioned after the expiration of defendant's term of office. It is then stated that Los Angeles County claims that each of said sums, commissions as aforesaid, should be paid into the county treasury and that said Kellogg "has no right to retain the same, or any part thereof," and that said Kellogg claims that "he is entitled to each of said sums in the aggregate sum of $4,857.72, as compensation for his services as administrator of said estates respectively." The court is asked "to determine said controversy and to cause judgment to be entered in one form determining whether or not the said Kellogg is entitled to said sums" or either of them, or whether or not said county of Los Angeles is entitled thereto, and for such other relief as may be meet and proper in the premises.

The agreed statement makes no attempt to show what part of the services, if any, was performed, or what proportion, if any, of the commissions earned before defendant's term of office expired. Commissions were claimed by defendant and allowed at the hearing and approval of the final account in each estate. Presumably the commissions covered the entire service both before and after the expiration of his term of office, for it is only at the close of the administration that the amount can be ascertained or ordered paid.

The court adjudged that said Kellogg received said sum of money as a trustee of said Los Angeles County, and that the same is the property of said county, and ordered him to pay the said sum into the county treasury. Defendant appeals from the judgment and from the order.

The public administrator is a county officer. (Pol. Code, sec. 4103; County Government Act—Stats. 1897, p. 472) and "must perform such duties as are prescribed in chapter XIII, title XI, part III of the Code of Civil Procedure." (Pol. Code, sec. 4303.) Among other duties he "must take charge of the estates of persons dying within his county, as follows:—

"1. Of the estates of decedents for which no administrators are appointed, and which, in consequence thereof, are being wasted, uncared for, or lost;

"2. Of the estates of decedents who have no known heirs;

"3. Of the estates ordered into his hands by the court; and,

"4. Of the estates upon which letters of administration have been issued to him by the court." (Code Civ. Proc., sec. 1726.)

Section 1743 of the Code of Civil Procedure is as follows: "When no direction is given in this chapter for the government or guidance of a public administrator in the discharge of his duties, or for the administration of an estate in his hands, the provisions of the preceding chapters of this title must govern" (i. e. such as relate to administrators generally).

Appellant contends that the office of public administrator is a mere qualification, and when letters are granted to him because of such qualification he occupies precisely the same position towards the estate as any other administrator; that his authority is derived wholly from his appointment by the issuance of letters to him; that he has no authority in the premises by virtue of his commission as public administrator

and his position as administrator of any particular estate is not affected in any respect by the expiration of his term of office as public administrator. (Citing *Beckett* v. *Selover*, 7 Cal. 230;[1] *Rogers* v. *Hoberlein*, 11 Cal. 127; *Estate of Hamilton*, 34 Cal. 468; *Estate of Aveline*, 53 Cal. 260; *Estate of Pingree*, 100 Cal. 80.) It is true that where a public administrator seeks administration of an estate under paragraph 4 of section 1726 and section 1365 of the Code of Civil Procedure, before he can take charge of the estate he must have a warrant of authority from the court, and the letters issued to him in the particular estate are his authority, as was held in some of the cases cited. But it is also true, as was said in *Healy* v. *Superior Court*, 127 Cal. 659: "The public administrator is the eighth class enumerated in section 1365 of the Code of Civil Procedure. He obtains letters of administration, not as an individual, but as public administrator by virtue of his office." His official character, in our opinion, is not changed, nor is it taken from him by the imposition of the duties devolved on him by the letters issued to him. He is as much the public administrator when administering an estate in the instance above referred to as when acting under any other paragraph of section 1726, and in those cases where for the time being he manifestly acts wholly by virtue of his office, he must "with all convenient dispatch procure letters of administration thereon [i. e. on the estate] in like manner and on like proceedings as letters of administration are issued to other persons." In these and in all cases "His official bond and oath [unlike the case of other persons appointed] are in lieu of the administrator's bond and oath." (Code Civ. Proc., sec. 1727; *Healy* v. *Superior Court*, 127 Cal. 659.) That he retains his official character while acting under letters of appointment, so far as the particular estate is concerned, even though his term of office has expired, is entirely consistent with the fact, as held in *Rogers* v. *Hoberlein*, 11 Cal. 127, that the grant of letters continue until it is set aside or revoked by another appointment, and, as was held in *Estate of Aveline*, 53 Cal. 260, that the sureties on his bond remain liable after his term expires as to all unfinished business. It was held in *Mitchell* v. *Hecker*, 59 Cal. 558, that his sureties are liable for wrongful appropriation of money of the estate, notwithstand-

[1] 68 Am. Dec. 237.

·ing the letters issuing to him did not (as they generally do ' and always should) refer to his official character. In several 'respects his duties differ from 'those of other persons who may be appointed. He must make return to the court every six months, etc. (Code Civ. Proc., sec. 1736), and this is not the equivalent of the return required of administrators by section 1622. (*Estate of Hedrick*, 127 Cal. 186.) He must deposit with the county treasurer all moneys received (Code Civ. Proc., sec. 1739); which can only be drawn out on his order "countersigned by a superior judge," (*Id.*) He must settle his accounts under oath with the county clerk for all moneys, etc., at certain specified times. (Code Civ. Proc., sec. 1739.) On final settlement of the estate any money in the hands of the public administrator, unclaimed, must be ' paid over to the county treasurer, in default of which the district attorney must institute the requisite proceedings against him and his sureties for judgment in the amount of money so withheld. (Code Civ. Proc., sec. 1740.) He may administer oaths in regard to all matters pertaining to his duty or the administration. (Code Civ. Proc., sec. 1742.) All these sections apply to a public administrator administering an estate, no matter under what particular section ' or paragraph of a section of the Code of Civil Procedure he may be acting, and they all deal with him in his official capacity and character of public administrator. It is made as much his official duty as public administrator to administer the estate under paragraph 4 of section 1726 as in any other case. The section declares that he "must take charge of the estates of persons dying within his county as follows"; and paragraph 4 is as much controlled by this provision as are the other paragraphs of the section under which he has express authority to administer, at least temporarily, by virtue of his office alone. The purpose of the law is to provide a public officer, acting under his oath of office and official bond, who shall be in a position at all times to administer estates where there is a failure of heirs or other persons competent to perform the service.

In *Rogers* v. *Hoberlein*, 11 Cal. 127, it was held that the successor of the public administrator did not by force of his office alone become entitled to administer an estate not yet fully administered by his predecessor, but must obtain a grant

of letters.  The court did not intimate that the outgoing pub-
lic administrator lost his official character in continuing the
administration.  On the contrary, the court seemed to enter-
tain quite the opposite view.  The court said: "At common
law a sheriff was, after the expiration of his term, from a
principle of convenience considered in some respects as an
officer; he could finish some kinds of business which he had
begun.  And so it has been held in other states, that an execu-
tor or administrator after his resignation or removal is to be
treated, for purposes of settlement, remedies, etc., as adminis-
trators in office."  With this view of the relation of the public
administrator to estates being administered by him, we are to
inquire whether he is entitled to the commission allowed to
other administrators for services performed after his term of
office has expired in counties where he receives a salary.  By
subdivision 10 of section 159 of the County Government Act
of 1897 (Stats. 1897, p. 499) the public administrator of Los
Angeles County receives a salary of three thousand dollars per
annum.  Section 215 of that act (Stats. 1897, p. 572) pro-
vides as follows: "The salaries and fees provided for in this
act shall be in full compensation for all services of every kind
and description rendered by the officers herein named, either
as officers or *ex officio* officers, their deputies and assistants,
unless in this act otherwise provided, and all deputies em-
ployed shall be paid by their principals out of the salaries
hereinbefore provided, unless in this act otherwise provided.
, . . "  Section 260 (Stats. 1897, p. 573) is as follows: "All
salaried officers of the several counties of this state shall
charge and collect for the use of their respective counties and
pay into the county treasury on the first Monday in each
month the fees now or hereafter allowed by law in all cases,
except where such fees, or percentage thereof, is allowed such
officers, and excepting also such fees as are a charge against
the county."  Section 217 (Stats. 1897, p. 573) is as follows:
"Each of the officers authorized to receive fees under the pro-
visions of this act must keep a fee-book . . . in which must
be entered at once in detail all fees or compensations, of what-
ever nature, kind, or description, collected or chargeable. . . .
On the expiration of the term of such officer, he must deliver
all fee-books kept by him to the county auditor."  Section 226
(Stats. 1897, p. 575) provides: "It shall be the duty of all

officers in this act named to complete the business of their respective offices to the time of the expiration of their respective terms. . . ." The only other statute bearing upon the question of the public administrator's compensation is section 1618 of the Code of Civil Procedure: " . . . Public administrators shall receive the same compensation and allowances as are allowed in this title to other administrators."

But for the provisions of the County Government Act, *supra,* making the public administrator of Los Angeles County a salaried officer, doubtless section 1618 would measure his compensation. The act, however, fixing his compensation by a salary and directing him to keep a book recording therein "all fees or compensation of whatever nature, kind, or description," and also providing that he must pay monthly into the county treasury the fees allowed him in all cases, and declaring that his salary shall be in full compensation for all services, is a special act and must control. (*Healy* v. *Superior Court,* 127 Cal. 659.) Unless he ceases to be controlled by this act at the expiration of his term, which we do not think should be held, there is no law by which he can be paid for subsequent services. The contrary view contended for by appellant would offer strong inducements for the public administrator, who is a salaried officer, to delay the settlement of estates, by doing which he would draw a salary to the close of his term and full compensation after his term had ended for such estates as were not fully administered; and, besides, the county would be paying his successor the salary provided by law. Furthermore, it would be a temptation to the successor to favor this practice, as it would relieve him from the labor and responsibility of caring for partly administered estates, and besides would be a practice profitable to him when he passed out of office.

Appellant insists that it was not only his right to continue his administration, after his term closed, but that it was his duty; and that it is but just and fair to compensate him, since he was but performing a duty imposed upon him. In a sense it is true that so long as his letters remained unrevoked, it was his right and duty to faithfully execute his trust, and, if there was no way by which he could have relieved himself of this trust, the equity of his claim for compensation, under an implied promise, might have some force. But it is not true

that he had no means of relief. He knew at the November election whether he was to continue in office; he had two months in which to close the business and prepare to turn over his trust to his successor. He should have asked the court by appropriate petition to revoke his letters, resigning his appointment in estates remaining unadministered; he should have stated his accounts to the close of his term and asked to be relieved from further performance of the trust. It would have been the duty of the court to settle his accounts, accept his resignation, revoke his letters, and direct his successor to take charge of the estate. (See Code Civ. Proc., secs. 1726, 1735.) If for any reason the successor could not act, the court should have appointed a special administrator. With this means of being relieved, the outgoing officer still persists in continuing to administer or refuses to relinquish his trust to his successor, he cannot be heard to complain if his services are regarded as voluntary and he be denied the right to any compensation therefor, except such compensation as he had already received by way of salary.

Since the transcript was filed the parties have stipulated that in one of the estates administered by defendant he is charged with having received $175.85 in excess of the amount in fact received by him as fees and commissions, and that if the judgment be affirmed this amount should be deducted therefrom.

It is advised that the order be affirmed, and that the sum of $175.85 be deducted from the judgment, and as thus diminished it be affirmed.

Gray, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the order is affirmed, and the sum of $175.85 deducted from the judgment, and as thus diminished it is affirmed.

                 Lorigan, J., Henshaw, J., McFarland, J.