[L. A. No. 15302. In Bank.—March 2, 1936.]

In the Matter of the Estate of GEO. H. MILLER, etc., Deceased. BEN H. BROWN, Public Administrator, et al., Appellants, v. EMILIE SOPHIE RUFFENACH, Respondent.

Everett W. Mattoon, County Counsel, J. H. O'Connor, Assistant County Counsel, and Ernest Purdum, Deputy County Counsel, for Appellants.

Earl Warren, District Attorney, Alameda County, Ralph E. Hoyt, Chief Assistant District Attorney, Nathan Harry Miller, Deputy District Attorney, Cecil Mosbacher, Deputy District Attorney, John J. O'Toole, City Attorney, San Francisco, Dion R. Holm, Assistant City Attorney, *Amici Curiae* on Behalf of Appellants.

Lloyd R. Massey and J. B. Joujou-Roche for Respondent.

Fred A. Steiner and Seymour W. Wurfel, Counsel for Coroner and Public Administrator, San Diego County, and Hugh K. McKevitt, as *Amici Curiae* on Behalf of Respondent.

CURTIS, J.—This appeal is taken from an order of the Superior Court of Los Angeles County, sitting in probate, denying any allowance for attorney's fees to the County Counsel of Los Angeles for services rendered the Public Administrator in the administration of the above estate. The sole

question presented on this appeal is whether or not the County Counsel legally may collect the statutory attorney's fees for services rendered to the Public Administrator in the administration of an estate, when the county charter requires the fees so collected by the County Counsel to be paid into the county treasury.

Section 21 of the Los Angeles County charter provides in part as follows:

"The County Counsel . . . shall also act as attorney for the Public Administrator in the matter of all estates in which such officer is executor, administrator with the will annexed, or administrator, and the County Counsel shall, in every such matter, collect the attorney's fees allowed therein by law and pay the same into the County Treasury."

Pursuant to this provision, the Public Administrator employed the County Counsel as his attorney in the above estate and it is admitted, and the record shows, that the County Counsel performed all the usual and necessary legal services in the probate thereof. When the Public Administrator filed his final account, he requested an allowance for the statutory fees for the County Counsel, as his attorney. The respondent, the sole heir of the estate, objected to the allowance of attorney's fees. Upon the hearing, it was stipulated that the attorney's fees, if paid to the County Counsel, under section 21, above quoted, would become the property of the county and would be paid by the County Counsel to the county treasurer. The trial court fixed the amount of the attorney's fees at $554.35, which amount was stipulated to. However, upon the authority of *Whelan* v. *Bailey*, 1 Cal. App. (2d) 334 [36 Pac. (2d) 709], it held that such fees were not here collectible by the County Counsel, whereupon this appeal from that order was taken by the Public Administrator and the County Counsel. *Whelan* v. *Bailey, supra,* in interpreting a provision of the San Diego County charter identical with the one here involved, held that it violated certain constitutional and statutory provisions and was invalid. No application to have the cause heard in this court was filed in that case. For reasons hereafter appearing, we are of the opinion that the reasoning of the appellate court in that case is unsound and the decision therein is hereby overruled.

■ The basic question presented is whether a county charter framed and adopted under section 7½ of article XI of the Constitution may lawfully authorize the county counsel or district attorney to act as the attorney for the public administrator in the estates handled by the public administrator, and may lawfully authorize the county counsel or district attorney to collect the statutory attorney's fees and pay the same to the county treasurer.

So far as pertinent here, section 7½ of article XI provides as follows:

"Any county may frame a charter for its own government consistent with and subject to the Constitution . . . and relating to matters authorized by provisions of the Constitution . . . and if approved by a majority vote of the members elected to each house [of the legislature], such charter shall become the charter of such county and shall become the organic law thereof relative to the matters therein provided . . . and shall supersede all laws inconsistent with such charter relative to the matters provided in such charter . . .

"It shall be competent, in all charters, framed under the authority given by this section to provide, *in addition* to any other provisions allowable by this Constitution, and the same shall provide for the following matters:

"2. For sheriffs . . . public administrators . . . district attorneys . . . and for their compensation . . .

"4. For the *powers* and *duties* of boards of supervisors and *all other county officers*, for their removal and for the consolidation and segregation of county offices. . . .

"All charters framed under the authority given by this section, in addition to the matters above specified, may provide as follows:

"For officers other than those required by the Constitution and laws of the state . . . and for their compensation." .

■ Under this section, it is clear that a county may, in its charter, provide for the powers and duties of its officers, and may do this without limitation by the general law. This was the exact holding in the case of *Reuter* v. *Board of Supervisors*, 220 Cal. 314, 320, 327 [30 Pac. (2d) 417]. In that case it was stated:

"At the time of the adoption of said constitutional amendment the general laws of the state, with meticulous care, had

fixed and defined the powers and duties of the board of supervisors and of each and every county officer in the state, except those acting under a city and county government, with which we are not here concerned. Therefore, if the powers and duties of boards of supervisors and county officers, as fixed by the charter, are 'subject to and controlled by general laws', then any attempt to provide for such powers and duties in the charter would be an idle act and a useless expenditure of effort. If these powers and duties as fixed by the charter conflicted in any way with those fixed by general laws then, if the proviso is to control, to the extent that they are inconsistent with those fixed by the general laws, they would be ineffective and void. If they did not so conflict with those fixed by the general laws, as we have said before, the charter provisions fixing said powers and duties, though valid, would simply amount to a re-enactment of that which was already the law—a mere superfluous or idle act. We do not think the framers of the amendment, nor the people of the state who ratified it, contemplated any such absurd results. . . .

██ "The people of the state in the adoption of this amendment had good cause to believe, and evidently did believe, that they were thereby providing a means whereby they might have home rule in their local and county affairs, including the right, in the words of the amendment, to provide for the powers and duties of their county officers. The amendment as adopted by them, when construed as a whole, is not only susceptible of such a construction, but cannot be given any other reasonable interpretation."

██ It cannot be doubted that the Public Administrator is a public officer of the county. The constitutional provision above quoted provides that charters must provide for this officer. Section 4013 of the Political Code provides: "The officers of a county are: . . . 11. A public administrator . . ." Section 14 of the Los Angeles County Charter provides: "The appointive county officers shall be . . . County Counsel . . . Public Administrator. . . . "

As such public officer, it is our opinion that the duties and functions of this officer are primarily governmental in nature. While in many respects the procedure the Public Administrator follows in many probate matters is the same as that followed by a private administrator, and while it

is true that many of his duties could be performed by a private administrator, there are many distinctions between the two. These distinctions are such as to indicate clearly that the Public Administrator is primarily a public officer performing essentially a governmental function. █ The purpose of the law creating the office of Public Administrator was to provide a public officer, acting under his oath of office and official bond, who should be in a position at all times to administer estates where there is a failure of heirs or other persons competent to act. While acting in one sense as the personal representative of the deceased, in a broader sense he represents the government and acts in a governmental capacity. A few illustrations suffice to demonstrate this fact. An appreciable portion of the Public Administrator's time is devoted to cases arising under section 1144 of the Probate Code, requiring summary probate by the Public Administrator of estates of $100 or less (and, as amended in 1935, of $200 or less) in which cases neither the Public Administrator nor his attorney can collect any fees at all for their services. The appointment of the Public Administrator is governed by different rules than those applicable to a private administrator and the former is entitled to appointment, if at all, only by virtue of his office. (Sec. 422, Probate Code; *County of Los Angeles* v. *Kellogg,* 146 Cal. 590 [80 Pac. 861].) Under section 1140 of the Probate Code, the Public Administrator is required to take charge of the property of a decedent, which property might be wasted when no administrator or executor has been appointed, and is required to take charge of estates without formal appointment when required by the court. Under section 1141 of the Probate Code, the Public Administrator's official bond and oath are in lieu of the administrator's bond and oath on the granting of letters. Under section 1147 of the Probate Code, the Public Administrator's powers of deposits and withdrawals of the money of an estate are restricted. Under section 1153 of the Probate Code, he must return a semi-annual report to the superior court of the estates that he handled. Under Political Code, section 4300 (i), when the Public Administrator receives a salary in lieu of fees, as he does in Los Angeles County, all fees and charges for the benefit of estates as limited in that section are made

county charges. Under Political Code, sections 4314 and 4013, the Public Administrator may administer oaths. Under sections 172 (c) and 1269 (b) of the Civil Code, the Public Administrator must represent the interest of an incompetent spouse upon proceedings to permit the other spouse to sell, mortgage or lease the community property or the homestead.

From these and other distinctions that could be made, it seems quite clear that the Public Administrator is a public officer, performing a governmental function. Since this is so, it necessarily follows that he is entitled to the legal services of the attorney for the county, at least, where the county charter so provides. (See sec. 4153 of the Pol. Code.) Section 21 of the Los Angeles charter, *supra*, expressly so provides.

It is seriously urged by the respondent, and by several *amici curiae* on her behalf, that the rendering of legal services by a county counsel to the Public Administrator in his official capacity and permitting the county to profit from the fees so earned, constitutes a violation of the prohibition against the practice of law by a corporation, and also constitutes a violation of several provisions of the State Bar Act. These contentions are without merit.

In the first place, as already pointed out, the Public Administrator is a public officer, performing essentially a governmental function in administering estates and performing his other duties. It therefore follows that when the County Counsel acts as his attorney, the County Counsel is not representing a private individual or carrying on a private law practice for the benefit of the county, but is performing an official duty for the benefit of a county officer. The question of fees is purely secondary. The state legislature has seen fit to provide that the Public Administrator and his attorney shall receive the same fees provided for private administrators and attorneys. In the case of estates administered by the Public Administrator, the state legislature has seen fit to require those benefiting from the estate to defray part of the cost of administering it by paying these fees. These fees then go to the county treasurer. The county is no more practicing law in this case than when the County Counsel represents the county or a school district in court, or when the district attorney

represents in court the county or its officers, or when the Public Defender represents private persons in criminal cases. The County Counsel and district attorney and Public Defender, of course, practice law—it is one of the qualifications of their office—but it is they who are practicing law, not the county. From some of the activities of the district attorney, the county actually makes a profit, as where a bond is forfeited.

There are other situations in which state officers, qualified in some profession, perform governmental functions for which fees are charged, which fees belong to the governmental agency, yet it has never been claimed that the governmental agency involved is practicing those professions.

Thus, under the Statutes of 1929, page 1505, relating to the supervision of dams by the department of public works, that department, through the state engineer, is authorized to collect fees for engineering services rendered by the department in passing on plans and specifications and in supervising the construction of dams. All fees collected are payable into the state treasury. Could it be contended that the state is practicing engineering, in violation of Statutes of 1929, page 1645, making it a misdemeanor for any person, not authorized, to practice engineering? Obviously not.

The state division of architecture is authorized to collect fees for services rendered by that department in the approval or rejection of plans for school buildings. (Stats. 1933, p. 352.) All fees thus collected are payable into the state treasury, yet the act regulating the practice of architecture (Stats. 1901, p. 641, as amended) makes it a misdemeanor for any person to practice architecture without a certificate.

The state, in furnishing engineering and architectural services for which it collects a fee, is not practicing civil engineering or architecture. It is engaged in the performance of a public service authorized by statute. The same reasoning applies to the Public Administrator and to the County Counsel.

In addition to the foregoing, it must be remembered that the county has a material financial interest in estates handled by the Public Administrator. As already pointed out, under section 4300 (i) of the Political Code, when the Public Administrator receives a salary in lieu of fees, all charges incurred by him in the administration of estates, except as

limited in the section, are made county charges. The prohibition against a corporation practicing law does not preclude a corporation from employing attorneys in any litigation in which it has a financial interest.

█  Another and complete answer to the contentions here being considered is that the provisions of the Code of Civil Procedure and the State Bar Act relating to the practice of law by a corporation do not apply to the state or to counties. A county is not a corporation, nor even a municipal corporation. Strictly speaking, a county is not a corporation at all. It is a legal subdivision of the state, charged with governmental powers. (*People* v. *McFadden*, 81 Cal. 489, 498 [22 Pac. 851, 15 Am. St. Rep. 66] ; *Dillwood* v. *Riecks*, 42 Cal. App. 602, 608 [184 Pac. 35] ; *Watson* v. *Greely*, 67 Cal. App. 328, 337 [227 Pac. 664].) █  Even if it be held that a county is a *quasi* corporation, as it was called in *County of Sacramento* v. *Chambers*, 33 Cal. App. 142, 146 [164 Pac. 613], it is well settled that in the absence of express words to the contrary, neither the state nor its subdivisions are included within the general words of a statute. (*Miles* v. *Ryan*, 172 Cal. 205, 207 [157 Pac. 5] ; *Liebman* v. *Richmond*, 103 Cal. App. 354, 359 [284 Pac. 731] ; *Mayrhofer* v. *Board of Education*, 89 Cal. 110, 112 [26 Pac. 646, 23 Am. St. Rep. 451].) The prohibition against a corporation practicing law for these reasons does not apply to a county.

█  The last point urged is that the charter provision in question conflicts with article IV, section 25, subdivision 12, of the Constitution, which provides in part:

"The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: . . . Twelfth. Affecting estates of deceased persons, minors, or other persons under legal disabilities . . . " There is no merit in this contention. The matter of depositing in the county treasury the fees collected does not in any way affect the administration of estates. When the fees are paid to the Public Administrator and by him to the County Counsel, the probate of the estate has been completed. After the fees are paid, they are not part of the assets of the estate. The fees are no different from those paid to a private attorney for the same purpose. Obviously, what happens to those fees after they are paid does not affect the estate being probated.

The order appealed from is reversed and the court below directed to enter its decree in accordance with the views herein expressed.

Shenk, J., Seawell, J., Thompson, J., Langdon, J., and Waste, C. J., concurred.