46 Cal.2d 121 (1956)
292 P.2d 881
Estate of MAE McMILLIN, Deceased.
E.A. WINSTANLEY, as Public Administrator, etc., Appellant,
v.
MORTON J. ROBINSON, Respondent. [And 82 other cases.][*]
Docket Nos. L.A. 23412-23446, 23573-23620.
Supreme Court of California. In Bank.
February 7, 1956.
*124 Harold W. Kennedy, County Counsel (Los Angeles), and Baldo M. Kristovich for Appellant.
S.V.O. Prichard for Respondent.
SPENCE, J.
The public administrator of the county of Los Angeles appeals from judgments entered in 83 cases sustaining the objections of respondent Robinson to the public administrator's final account in each decedent's estate and ordering him to pay Robinson a specified sum from the funds of the estate. There were two consolidated trials, one covering 35 estates and the other 48 estates. The 83 appeals have been submitted on one set of briefs. Identical questions are involved in these cases, and the 83 appeals may be decided in one opinion.
The main dispute concerns the validity of respondent's *125 employment. Appellant contends that since respondent was not hired pursuant to civil service regulations, his employment was illegal and he cannot recover for his services. On the other hand, respondent contends that civil service requirements had no application to his employment, that the contract of hiring in each estate was legally made, and he should be paid in accordance therewith. We have concluded that respondent's contentions must be sustained, and it is therefore unnecessary to consider respondent's alternative claim to a right of recovery upon quantum meruit. (Cf. Estate of Schnell, 82 Cal. App.2d 170, 174-175 [185 P.2d 854].)
Robinson is a tax consultant and a licensed public accountant. He was hired by the former public administrator to prepare and file tax returns in certain estates represented by the public administrator. It was agreed that on the completion of the work in each estate Robinson would be paid from the funds of that estate on submitting a statement to the public administrator for his approval and subject to the approval of the court. Pursuant to this arrangement made in 1942, Robinson examined every estate coming into the public administrator's office and did the tax work in those estates where it was required. Robinson personally hired and paid an assistant to work a full-time week in the public administrator's office. There they had free desk space, stationery and telephone service, as well as access to the entire office in the same manner as county civil service employees. Robinson also maintained a private office and staff to do general tax work. When Robinson completed his work in a particular estate, he submitted his statement to the public administrator showing the extent of his services and his fee. The latter then approved the amount; and it would be included in the final account and paid after approval by the court.
After the board of supervisors had created specific tax positions in the civil service system designed for the handling of tax matters in the public administrator's office, the county counsel advised the public administrator in September, 1953, that all tax work in his office should be done by civil service employees. Robinson has done no tax work for the public administrator since October, 1953. Appellant, the present public administrator, was appointed on November 7, 1953. Since that date he has had a tax division composed entirely of civil service employees, and they do all the tax work in the office.
Appellant filed a final account in each of the estates here *126 involved, and he failed to include therein an allowance for Robinson's tax work. Thereupon Robinson filed in each estate his "Objections To Final Account And Petition That Allowance Be Made To Objector," alleging: His employment by the predecessor of the present public administrator, who was the administrator of the estate, to perform, pursuant to the provisions of section 902 of the Probate Code, certain extraordinary services in connection with the estate, that is, necessary tax work; his performance of the services as detailed in an attached exhibit; and the reasonable value of the services. He prayed that the sum so specified be included in the charges against the estate and directed to be paid to him.
The court found that Robinson was a licensed public accountant; that the public administrator was a charter officer authorized to administer certain estates of decedents under the provisions of the Probate Code; that from 1943 to October 6, 1953, the former public administrator had employed Robinson to prepare and file individual and fiduciary income tax returns required by law in all estates represented by the public administrator; that it was agreed between Robinson and the public administrator that Robinson should be paid only from the funds of the respective estates in which such services were performed and in such amounts as might be allowed by the probate court as expenses of administration therein; and that the income tax services performed by Robinson and his employees for the public administrator "could at all times have been adequately and satisfactorily performed by persons selected under the provisions of the Civil Service System as established by the Charter of the County of Los Angeles." The court concluded that said public administrator "had the authority, by virtue of section 902 of the Probate Code, to employ tax accountants to perform income tax services of the nature of those performed by [Robinson] in estates wherein said Public Administrator is the fiduciary"; that the "provisions of the Charter of the County of Los Angeles establishing a comprehensive Civil Service System did not and do not apply to said Public Administrator in the employment of [Robinson] as a tax accountant for said estates"; and that Robinson's objections to the final account should be sustained. Accordingly, the judgment in each estate sustained Robinson's objections and ordered the public administrator to pay to Robinson a specified sum from the funds of the estate.
Preliminarily, there is the question of respondent's right to object to the final accounts. It is provided in section 927 *127 of the Probate Code that upon the filing of an account by an administrator "any person interested in the estate may appear and file written exceptions to the account, and contest the same." No statutory definition has been given to the words "person interested in the estate." [1] It has long been the rule in this state that a creditor is an interested person and entitled to except. (Tompkins v. Weeks, 26 Cal. 50, 57; Estate of Loshe, 62 Cal. 413, 415; Estate of McDougald, 143 Cal. 476, 479 [77 P. 443].) Appellant contends that this means a "creditor of the decedent by virtue of a contractual relationship created by the decedent during his lifetime." But he cites no case which so limits the term, and to so hold would appear contrary to the generally accepted meaning of the word "interested" as used in the statute. (See Estate of Reinicke, 44 Cal. App.2d 271, 274 [112 P.2d 311].) Rather, as respondent maintains, the pivotal question is whether the excepting party is a creditor of the estate as distinguished from a creditor of the personal representative, who, in turn, has a claim against the estate. [2] Thus, the attorney for the executor or administrator is recognized as one interested in the estate because he is now entitled to a statutory allowance "out of the estate." (Prob. Code, §§ 910, 911; Estate of Hite, 155 Cal. 448, 453 [101 P. 448]; Chapman v. Pitcher, 207 Cal. 63, 68 [276 P. 1008]; Estate of Pailhe, 114 Cal. App.2d 658, 665 [251 P.2d 76].) Before the law so provided, he was not so considered and he could not rightfully except. (Briggs v. Breen, 123 Cal. 657, 659-660 [56 P. 633, 886]; Estate of Kruger, 143 Cal. 141, 145 [76 P. 891].)
[3] Section 902 of the Probate Code provides for allowances for extraordinary services, such as the preparation of necessary tax returns: in the estate. Moreover, it authorizes the executor or administrator to employ a tax expert to do the tax work and to "pay [him] from the funds of the estate for [his] services." (As amended, Stats. 1951, ch. 1604, § 1.) It is therefore reasonable to regard the tax expert so employed as having a demand against the estate as contemplated by section 950 of the Probate Code. [4] In Garwood v. Garwood, 29 Cal. 514, at page 520, it was said that "any doubt as to the question of interest ought to be resolved in favor of the" party claiming an interest in the estate. (See also Estate of Brown, 24 Cal. App.2d 573, 575 [75 P.2d 658]; Estate of Reinicker, supra, 44 Cal. App.2d 271, 273-274; Estate of Harrison, 103 Cal. App.2d 12, 15 [228 P.2d 881].) *128 The court here, after taking evidence on the issue, recognized respondent as an interested person in these estates, which estates constitute the source of the funds out of which he seeks payment. Its decision appears to be in accord with the broad meaning of the statute. (See Eastwood v. Stewart, 64 Cal. App. 614, 617-618 [222 P. 369].)
[5] Nor is there merit to appellant's claim that the statute did not authorize the document filed by respondent in each of these estates setting forth his claim for payment. In each instance the document was entitled "Objections To Final Account And Petition That Allowance Be Made to Objector." As above noted, section 927 of the Probate Code provides that "a person interested in an estate" may file "written exceptions" to an account. "Objections" and `exceptions" are equivalent terms. (Estate of Pardue, 57 Cal. App.2d 918, 920 [135 P.2d 394].) [6] While the statute does not provide as to the form or contents of the "written exceptions," it would seem appropriate to give the term a broad scope. Thus the "written exceptions" may include exceptions not only to what is affirmatively stated in an account, but also to what is omitted therefrom (Estates of Boyes, 151 Cal. 143, 147-148 [90 P. 454]), and they may properly pray that the account be surcharged with what was omitted. (Eastwood v. Stewart, supra, 64 Cal. App. 614, 617.) This was the procedure followed by respondent. After appellant filed his account in each of these estates and omitted therefrom any reference to respondent's tax services, respondent filed his "exceptions" or "objections." As part thereof, he petitioned that an allowance for his services be included in the charges against the estate and that payment be directed. He did not purport to proceed by way of an independent petition without regard to whether the final account had been filed in the estate. The latter procedure is provided for attorneys pursuant to Probate Code, section 911; and appellant's cases to that effect are not in point. (Estate of Kafitz, 51 Cal. App. 325 [196 P. 790]; Chapman v. Pitcher, supra, 207 Cal. 63; Summ v. Superior Court, 29 Cal. App.2d 303 [84 P.2d 152].)
There now remains the main question of whether the former public administrator had the authority to employ respondent as a tax consultant on contract independently of the civil service requirements of the Los Angeles county charter. There is no dispute as to the reasonableness of the amounts allowed for respondent's services, but concededly respondent was not a civil service employee.
*129 [7] While undoubtedly the public administrator is "primarily a public officer performing essentially a governmental function" (Estate of Miller, 5 Cal.2d 588, 594 [55 P.2d 491]), he also acts in another capacity. When by virtue of his office, he is appointed the administrator of a particular estate, he becomes as to that estate the trustee of a private trust. (See Evans v. Superior Court, 14 Cal.2d 563, 574 [96 P.2d 107].) [8] While his official character is not changed in the sense that he remains a salaried county officer and he must comply with statutory provisions regulating his administration of estates by virtue of his office, such as paying into the county treasury all commissions allowed by the court for his services (County of Los Angeles v. Kellogg, 146 Cal. 590, 595-596 [80 P. 861]), at the same time his authority to administer a particular estate is derived from the issuance of letters of administration to him. [9] It is true that his powers and duties, because of his official character, differ in several respects from those of other persons who may be appointed administrators. (Prob. Code, §§ 1140-1155; County of Los Angeles v. Kellogg, supra, p. 594; Estate of Miller, supra, 5 Cal.2d 588, 593-594.) But where there is no statutory or charter provision specifically governing the public administrator in the discharge of his duties, then he has such powers and duties as would apply to administrators generally. (Prob. Code, § 1142.)
[10] Section 902 of the Probate Code authorizes every "executor or administrator" to make whatever contracts may be necessary for the performance of "extraordinary services" on behalf of the estate which he represents. It particularly permits the employment of "tax experts" and directs that they may be paid "from the funds of the estate for [their] services." That section, in the absence of statutory or charter provision declaring otherwise, would apply to the public administrator in his administration of a private trust as well as to any other administrator. In the making of such a contract, the public administrator acts not on behalf of the county, but on behalf of the estate which he is administering, and the tax expert's employment is with the particular estate. [11] Like any other administrator, the public administrator may arrange for the employment by independent contract for each estate where the services are needed; the employment is temporary in that it continues only for the life of the particular estate; the services are for the benefit of the estate *130 and the tax expert so employed is paid from the funds of the estate.
[12] Appellant's predecessor proceeded under this section in his contractual arrangements with respondent. He and respondent generally agreed that respondent was to do the tax work in those estates coming into the office where such services were required. Over the more than 10 years during which this arrangement prevailed, respondent examined about 15,000 estates and did tax work in 4,000 or 5,000. While his general work of reviewing the estates was continuous and permanent during that period, his compensation was dependent on his performance of tax services in each particular estate. In that sense his contract of employment was independently made with each estate, and the only charges he made were for services to be paid out of the funds of that estate. Such employment arrangements have no relation to civil service provisions, which normally serve only for the purpose of controlling public work by public employees.
Appellant argues that "where a governmental agency has a civil service system, all work which can be performed by persons employed pursuant thereto must be performed by such persons." (State Comp. Ins. Fund v. Riley, 9 Cal.2d 126 [69 P.2d 985, 111 A.L.R. 1503]; Stockburger v. Riley, 21 Cal. App.2d 165 [68 P.2d 741].) But the cited cases concerned contracts for services to be performed for the state or a state agency, acting in its governmental or proprietary capacity, wherein the state civil service structure was bypassed, and mandamus was unsuccessfully sought against the state controller for payment of such services. Also distinguishable is the case of Estate of Miller, supra, 5 Cal.2d 588, which involved a charter provision expressly requiring that "The County Counsel ... shall also act as attorney for the Public Administrator in the matter of all estates...." (P. 591.)
[13] While appellant may now have the authority to appoint civil service employees to the new positions created by the board of supervisors in his department, that fact does not militate against our conclusion that respondent's contracts with appellant's predecessor were valid. The authority for making such contracts rested on the provisions of section 902 of the Probate Code, and we find no provision in the Los Angeles County Charter or elsewhere expressly or impliedly denying that authority to the public administrator. Appellant concedes that "the charter may be silent as to the *131 powers and duties of the public administrator," but he seeks to base the claimed denial of that authority upon the provisions of the charter relating to civil service. Such provisions, however, relate solely to positions in the county service, and we find nothing therein which purports to affect the authority of the public administrator to make a contract on behalf of an estate with a person specially employed to perform necessary tax services and to be paid therefor "from the funds of the estate." (Prob. Code, § 902; see Evans v. Superior Court, supra, 14 Cal.2d 563, 579.)
If appellant's reasoning is carried to its logical conclusion, it would mean that every contract made by the public administrator for services to be performed for and paid out of the funds of any estate would be invalid if such services could be satisfactorily performed by persons selected from the civil service list. Thus all carpenters, painters, electricians, plumbers, janitors, and others required for the repair and maintenance of the property of any estate, and all persons, such as accountants and stenographers, required for the continuance of a going business of the deceased would have to be selected from the civil service list if such list covered such classifications; and any independent contract for the performance of such services would be invalid. [14] This cannot be the rule, for persons specially employed by a public officer in his capacity as the trustee of a private trust are not deemed to be public employees. (Evans v. Superior Court, supra, 14 Cal.2d 563, 574.) It is therefore immaterial that appellant and other public administrators may now have, and may now be exercising, the authority to appoint tax experts from the civil service list for the performance of such services or that such work can be satisfactorily performed by such civil service employees.
We conclude that until such time as the authority granted to every administrator by section 902 of the Probate Code may be clearly denied to the public administrator by some statutory or charter provision, such public administrator may validly contract thereunder for necessary tax services to be paid for from estate funds. We further conclude that the probate court properly determined that respondent's contract was valid in each of the estates involved, and that respondent was entitled to the allowance made for his services.
The judgments are affirmed.
Gibson, C.J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and McComb, J., concurred.
NOTES
[*] Estate of Maude Evelyn Arnold, L.A. 23413; Estate of May L. Barrett, L.A. 23414; Estate of Joseph W. Biell, L.A. 23415; Estate of Anna L. Brandon, L.A. 23416; Estate of Gilbert M. Cruz, L.A. 23417; Estate of John Effland, L.A. 23418; Estate of Margaret Freedman, L.A. 23419; Estate of Idah Martino Grey, L.A. 23420; Estate of Albert Hayduk, L.A. 23421; Estate of Philip F. Havey, L.A. 23422; Estate of John Michael Heffernan, L.A. 23423; Estate of Shih Ching Lo, L.A. 23424; Estate of Emily F. McCartin, L.A. 23425; Estate of David C. Mendoza, L.A. 23426; Estate of Ramon Mendoza, L.A. 23427; Estate of Sam Miller, L.A. 23428; Estate of Emma Mohr, L.A. 23429; Estate of Harry F. Moore, L.A. 23430; Estate of Charles W. Morrison, L.A. 23431; Estate of Sidney Pitt, L.A. 23432; Estate of Byron H. Riess, L.A. 23433; Estate of Bessie B. Richardson, L.A. 23434; Estate of Bridget Rosenberg, L.A. 23435; Estate of James Robert Ryall, L.A. 23436; Estate of Jerry Steno, L.A. 23437; Estate of Arthur Roland Van Paemel, L.A. 23438; Estate of Joseph Francis Walsh, L.A. 23439; Estate of Clarence Charles Weaver, L.A. 23440; Estate of Edna L. Wells, L.A. 23441; Estate of Charles Le Roy White, L.A. 23442; Estate of Harry Wright, L.A. 23443; Estate of Heinrich Mann, L.A. 23444; Estate of Lillian M. Grimes, L.A. 23445; Estate of Louis Michael Buettner, L.A. 23446; Estate of Arthur Alfred Christof, L.A. 23573; Estate of Sadye M. Berg, L.A. 23574; Estate of Stefan Bisser, L.A. 23575; Estate of William Dante Bossi, L.A. 23576; Estate of Rollie Fred Braziel, L.A. 23577; Estate of Harold Guinn Burgess, L.A. 23578; Estate of Helen Rutherford Dick, L.A. 23579; Estate of Albert Henry Felske, L.A. 23580; Estate of Anthony Jones Ferdinand, L.A. 23581; Estate of Agnes I. Fontaine, L.A. 23582; Estate of Sam Foroi, L.A. 23583; Estate of Mildred A. Geller, L.A. 23584; Estate of Rose J. Good, L.A. 23585; Estate of James J. Grady, L.A. 23586; Estate of Frederick L. Hogan, L.A. 23587; Estate of Charles Roland Howarth, L.A. 23588; Estate of Carl Herbert Iman, L.A. 23589; Estate of Charles B. Jamieson, L.A. 23590; Estate of John Thomas Jenkins, L.A. 23591; Estate of John Peter Jones, L.A. 23592; Estate of Edna L. Kasdorf, L.A. 23593; Estate of George Daizalmo Kumagia, L.A. 23594; Estate of Fred Emil Kuntz, L.A. 23595; Estate of Aldon Victor Landry, L.A. 23596; Estate of Eulalia Landry, L.A. 23597; Estate of Gust Peter Lerch, L.A. 23598; Estate of Willis G. Long, L.A. 23599; Estate of Robert G. Loomis, L.A. 23600; Estate of Ralph L. Loveland, L.A. 23601; Estate of Tadoyoshi Matsubara, L.A. 23602; Estate of Fred Milton McKee, L.A. 23603; Estate of John Joseph McHugh, L.A. 23604; Estate of Edna Clark Sawyer Moffatt, L.A. 23605; Estate of Mary L. Moore, L.A. 23606; Estate of Laura Petlansky, L.A. 23607; Estate of Edward James Phillips, L.A. 23608; Estate of James Ray, L.A. 23609; Estate of Carlin W. Rowe, L.A. 23610; Estate of Hugo Schellinger, L.A. 23611; Estate of Max Scheige, L.A. 23612; Estate of Claude C. Smith, L.A. 23613; Estate of Theresa May Snowden, L.A. 23614; Estate of Edward Francis Spear, L.A. 23615; Estate of Martin M. Sullivan, L.A. 23616; Estate of Ann Symington, L.A. 23617; Estate of Ethel Lawson Trites, L.A. 23618; Estate of Mary Young, L.A. 23619; Estate of Jacob Zimmerman, L.A. 23620.