[Crim. No. 3139.   First Dist., Div. Two.   Apr. 27, 1956.]

THE PEOPLE, Respondent, v. WILLIAM F. CROSBY, Appellant.

James Martin MacInnis and Vladimir Vucinich for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Raymond M. Momboisse, Deputy Attorney General, Keith C. Sorenson, District Attorney (San Mateo), and W. Howard Hartley, Deputy District Attorney, for Respondent.

DOOLING, J.—The Grand Jury of the County of San Mateo filed a 36-count indictment against appellant William F. Crosby charging him with 18 violations of Penal Code, section 424, subdivision 1, and 18 violations of Penal Code, section 424, subdivision 2. Appellant pleaded "Not Guilty" to all counts of the indictment. After a jury trial appellant was found guilty of violating Penal Code, section 424, subdivision 1 as charged in 18 of the counts and not guilty of the charges of violating subdivision 2 of that section. Appellant's motion for a new trial was denied. This appeal is taken from the judgment entered.

It appears that appellant became public administrator of San Mateo County in 1935 and retained that position until he resigned on August 13, 1953.

Under section 1147, Probate Code, the public administrator is required to keep the moneys of estates which he is administering on deposit with the county treasurer or "he may deposit any amount thereof with one or more banks authorized to do business in his county." Appellant made no deposits with the county treasurer but used the alternative authorized method of depositing the funds in various banks under accounts opened in the names of the several estates. The evidence showed failures to make deposits of moneys received and apparently unauthorized withdrawals from such accounts with subsequent redeposits of the amounts previously withdrawn. Also withdrawals from some accounts and deposits in others at about the same time. From these circumstances the prosecutor argued that appellant was using the moneys from these estates and later reimbursing them, sometimes from the funds of other estates.

Appellant flatly and consistently denied that he at any time used any of these moneys. He testified that he was a poor

bookkeeper, with little formal education, that he at times confused the estates which he was handling and made withdrawals from the wrong estate accounts, but insisted that he at all times had all the funds of all such estates available, keeping a large amount of cash belonging to such estates in his safe deposit box or elsewhere. He denied that he deposited any money that he had drawn from any estate account in the account of any other estate, but insisted that any money so withdrawn by mistake was kept by him at all times in cash, until it was redeposited in the proper account.

■■ Appellant first argues that the funds held by him in his capacity as public administrator were private rather than public moneys. He thus contends that the evidence is fatally inconsistent with the language of the indictment which is couched in the words of Penal Code, section 424, subdivisions 1 and 2. That section provides:

"Each officer of this state, or of any county, city, town, or district of this state, and every other person charged with the receipt, safe-keeping, transfer, or disbursement of public moneys, who either:—

"1. Without authority of law, appropriates the same, or any portion thereof, to his own use, or to the use of another; or,

"2. Loans the same or any portion thereof; makes any profit out of, or uses the same for any purpose not authorized by law; . . .

"Is punishable by imprisonment in the state prison for not less than one nor more than ten years, and is disqualified from holding any office in this state."

Penal Code, section 426, provides:

"The phrase 'public moneys,' as used in the two preceding sections, includes all bonds and evidence of indebtedness, and all moneys belonging to the state, or any city, county, town, or district therein, and all moneys, bonds, and evidences of indebtedness received or held by state, county, district, city, or town officers *in their official capacity.*" (Emphasis ours.)

For the most part the argument of appellant on this point seems to ignore the latter statute. Thus the federal cases and those from other jurisdictions relied on by him are distinguishable from the instant one in that they did not involve a statute similar to Penal Code, section 426, defining the phrase "public moneys." It may be conceded that in the absence of such a statute the funds here involved would not be public moneys in that they were never the property of a governmental sub-

division. However, in view of the latter clause of that section the funds here received by appellant were public moneys in that they were received and held by him in his official capacity as public administrator, a county officer. In *People* v. *Hamilton,* 3 Cal.Unrep. 825 [32 P. 526], it was stated that an allegation that moneys were received by the defendant "in his official capacity" is an allegation of a fact which conclusively fixes their character as "public moneys." The court further stated that it was the official character in which the moneys are received, and not the ultimate ownership of the money, which, under the last clause of Penal Code, section 426, makes them public moneys. *People* v. *Moulton,* 116 Cal.App. 552, 556 [2 P.2d 1009], would seem also to support the view that moneys received by a public officer in his official capacity are "public moneys." On this point appellant relies on *People* v. *Showalter,* 126 Cal.App. 665 [14 P.2d 1034], stating that it held that a court-appointed receiver holding the stakes of litigation did not hold public moneys, and hence could not be indicted pursuant to Penal Code, section 424. However in that case the court found that the defendant was not a public officer and after reaching this conclusion the money involved could not be public money under the second portion of Penal Code, section 426, defining that term. In the instant case appellant seems to argue that although a public administrator may be a public officer he doesn't always act as such and that in the administration of estates he is not such an officer. There seems to be no merit to this contention. ■ There is no doubt that a public administrator is a public officer of a county. (*Estate of Miller,* 5 Cal.2d 588, 593-595 [55 P.2d 491]; *People* v. *McAtee,* 35 Cal.App.2d 329 [95 P.2d 471].) Further Government Code, section 24000 provides that a public administrator is a county officer. We find nothing in *Estate of McMillin,* 46 Cal.2d 121 [292 P.2d 881], or any other California case inconsistent with this conclusion. While, for most purposes, in the administration of a particular estate he has the powers of any administrator the public administrator still remains "primarily a public officer performing essentially a governmental function." (*Estate of McMillin, supra,* 46 Cal.2d at p. 129.)

Appellant next contends that the trial court committed prejudicial error in instructing the jury:

"If you should find that the defendant knowingly and wilfully placed monies belonging to estates under his administration in a safe deposit box, instead of depositing with the

County Treasurer or with a bank, you may find that such use of monies was without authorization and contrary to law.''

Probate Code, section 1147, provides: ''The public administrator, as soon as he receives the same, must deposit all moneys of the estate with the county treasurer of the county in which the proceedings are pending; or, if not required for current expenses, he may deposit any amount thereof with one or more banks authorized to do business in his county . . .'' In view of this code section the People argue that the instruction attacked was a correct statement of the law. We cannot agree that it was proper to give this instruction in this case.

█ The instruction cut clearly at the heart of the only defense urged by appellant, that he did not use the money of any estate but at all times had all such moneys either in bank or in cash in the safe deposit box or elsewhere. It is the gist of the offense proscribed by section 424, subdivisions 1 and 2, Penal Code, that the defendant *use* the moneys of the estate in some fashion. By this instruction the jury was not only told that the keeping of such money in a safe deposit box was illegal, but that it was an illegal *use* of such money. In other words they were instructed that under the facts admitted by appellant himself he was guilty of the crimes charged.

We think that this was clearly error. █ ''To use,'' in the sense in which the word ''use'' is employed in this section is: ''To make use of . . . to convert to one's service; to avail oneself of; to employ; as to *use* a plow, a chair, a book . . .'' (Webster's New Internat. Dict., 2d ed.) █ To keep money in a safe deposit box or elsewhere is not ''to use'' it in any common acceptation of that word.

That this is the sense in which the word ''use'' is employed in section 424, Penal Code, is further demonstrated, if the obvious needs further demonstration, by section 425, Penal Code, which was enacted simultaneously with the original section 424 in 1872. Section 425 reads: ''Every officer charged wtih the receipt, safekeeping, or disbursement of public moneys, who neglects or fails to keep and pay over the same in the manner prescribed by law, is guilty of a felony.''

By this section the failure to *keep* the money in the manner prescribed *by law is* made a distinct offense. █ The two sections are *in pari materia* and must be construed together. (23 Cal.Jur., Stats., §§ 163-164, pp. 785-787.) █ They

make clear, when so construed, that the "use" of such money proscribed by section 424 is not the neglect or failure "to keep" such money "in the manner prescribed by law," denounced by section 425. Nor are the penalties the same. The violation of section 424 is punishable by one to ten years imprisonment and disqualification to hold office. The penalty for violating section 425 is six months to five years (Pen. Code §§ 18, 18a) with no expressed disqualification.

Appellant was not charged with a violation of section 425 and yet under the instruction complained of it became the jury's duty to convict him of the violation of section 424 on proof which might have supported a conviction of violating section 425, but would fall short of proving a violation of section 424. The prejudice from this instruction is obvious.

Appellant's last contention is that the trial court erroneously declined to consider his probation application because of the prohibition contained in Penal Code, section 1203, which states that probation may not be granted to ". . . any public official or peace officer of the State, county, city, city and county, or other political subdivision who, in the discharge of the duties of his public office or employment, . . . embezzled public money . . ." This question need not be considered in view of our conclusion that the judgment must be reversed.

Judgment reversed.

Nourse, P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied May 11, 1956, and respondent's petition for a hearing by the Supreme Court was denied May 23, 1956.