[Civ. No. 36260. First Dist., Div. Four. Feb. 18, 1976.]

HENRY GRIER et al., Plaintiffs and Appellants, v.
ALAMEDA-CONTRA COSTA TRANSIT DISTRICT,
Defendant and Respondent.

COUNSEL

Brundage, Neyhart, Beeson & Tayer, Joseph Freitas, Jr., Peter N. Hagberg and Laura Stevens for Plaintiffs and Appellants.

Hardin, Cook, Loper, Engel & Bergez, Herman Cook, Steven M. Kohn, Robert E. Nisbet and Richard W. Meier for Defendant and Respondent.

**OPINION**

**CALDECOTT, P. J.**—Plaintiffs and appellants Henry Grier, Michael Chuba, Donald E. Figas, and Orlin Purdue, Sr., on behalf of themselves and all others similarly situated, and Division 192, Amalgamated Transit Union, the labor union representing the named plaintiffs and other bus drivers employed by respondent, brought this action for declaratory relief and damages. The complaint alleged that respondent Alameda-Contra Costa Transit District (hereinafter Transit District) was violating Labor Code section 2928 by requiring drivers who arrived for work late to work without pay for periods in excess of the time actually lost through tardiness. Following judgment for respondent this appeal was filed.

Respondent Transit District is a public entity created pursuant to the provisions of the Transit District Law, Public Utilities Code sections 24501-27509. The individual appellants are bus drivers, employees of respondent, and are members of appellant Division 192, Amalgamated Transit Union (hereinafter union). The union is the collective bargaining representative for the bus drivers employed by the Transit District.

The collective bargaining agreement signed by the union and the Transit District contained certain provisions relating to "oversleeps," the euphemistic term applied to tardiness for work for any reason. Section 50 of the agreement provided that drivers who were late for work without a satisfactory excuse would serve "penalty point" duty. This consisted of sitting in the dispatching area of the Transit District until the driver was released for the day or was assigned to a run. The penalties for oversleeps were imposed without regard to the actual amount of time that the employee was tardy; i.e., five minutes of tardiness could result, on a first oversleep, in two hours of penalty point, or, on a fifth oversleep, in 12 hours of penalty point. A driver not assigned to a run during the two hours of penalty point was released for that day, and was not paid at all for the two hours. A driver sitting penalty point who was actually assigned to a run during that time was paid for all time worked, with a minimum of four hours guaranteed pay.

Other drivers for the Transit District regularly perform the same duties, sitting in the dispatch office waiting for an assignment. This is called sitting "pay point." These drivers are paid either straight time or time and a half, depending on whether they work on their regular days, or days off.

Labor Code section 2928 provides: "No deduction from the wages of an employee on account of his coming late to work shall be made in excess of the proportionate wage which would have been earned during the time actually lost, but for a loss of time less than 30 minutes, a half hour's wage may be deducted."

Appellants argued that the penalty point provisions were in violation of the quoted Labor Code section, and sought damages for the hours worked without pay. Respondents contended, and the court below found, that Labor Code section 2928 does not apply to the Transit District.

I

Respondent contends that this appeal has been rendered moot by the parties' entry into a new collective bargaining agreement in August 1974, containing no oversleep provisions. It asserts that since the penalty point system is no longer in effect, the question of whether it was invalid under Labor Code section 2928 is moot.

■ Although, as a general rule, an appeal presenting only abstract or academic questions should be dismissed as moot (*Paul* v. *Milk Depots, Inc.,* 62 Cal.2d 129, 132 [41 Cal.Rptr. 468, 396 P.2d 924]), the appeal is not moot nor subject to dismissal if the question to be decided is of general public interest (*County of Madera* v. *Gendron,* 59 Cal.2d 798, 804 [31 Cal.Rptr. 302, 382 P.2d 342, 6 A.L.R.3d 555]); or if there is a likelihood of recurrence of the controversy between the same parties or others; or if there remain material questions for the court's determination. (*Diamond* v. *Bland,* 3 Cal.3d 653, 657 [91 Cal.Rptr. 501, 477 P.2d 733]; *Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind,* 67 Cal.2d 536, 541 [63 Cal.Rptr. 21, 432 P.2d 717].) This appeal should not be considered moot.

■ In addition to declaratory and injunctive relief relating to the oversleep provisions, the complaint sought damages for the individual named plaintiffs and the class they claimed to represent. The claim for damages was based upon the alleged invalidity of the penalty point system under state law, and the wages unpaid for periods of sitting penalty point when no assignment out was made.

This issue of damages is plainly a "material issue for the court's determination." If the decision of the court below is found to be erroneous, and the oversleep section is found to violate applicable state law, the case must be remanded for a determination of the number of hours each employee was required to work without pay. Thus, though the other questions may be moot as a result of the new collective bargaining agreement, the matter of damages is not. (Cf. *Sauer* v. *McCarthy,* 54 Cal.2d 295, 297 [5 Cal.Rptr. 682, 353 P.2d 290]; *Elevator Operators etc. Union* v. *Newman,* 30 Cal.2d 799, 803 [186 P.2d 1].)

Respondent urges that the case of *Consol. etc. Corp.* v. *United A. etc. Workers,* 27 Cal.2d 859 [167 P.2d 725], is controlling. The Supreme Court dismissed the appeal as moot, because a new contract had been entered into superseding the agreement in question and the union's claim of damages was based on breach of contract and there was no breach. *Consol. Corp.* is plainly distinguishable from the instant case. (See also *Keith Garrick, Inc.* v. *Local No. 2,* 213 Cal.App.2d 434, 435 [28 Cal.Rptr. 750] (appeal dismissed as moot because new collective bargaining agreement entered and *plaintiffs had waived damages*); *Paoli* v. *Cal. & Hawaiian Sugar etc. Corp.,* 140 Cal.App.2d 854 [296 P.2d 31] (appeal

dismissed as moot because new collective bargaining agreement entered and *plaintiffs had not appealed the trial court's finding of "no damages."*).)[1]

## II

■ The court below concluded that the Legislature intended that *only* the provisions of the Transit District Law (Pub. Util. Code, § 24501 et seq.) and the rules and regulations adopted by the board of directors of the Transit District pursuant thereto, should control the district's labor relations. Nothing in the express language of the Transit District Law indicates an intent for such exclusiveness.

The court below cited several portions of the Transit District Law in support of its conclusion. Section 24883 provides that the board of directors "is the legislative body of the district and determines all questions of policy." Section 24886 authorizes the board to adopt a personnel system. Section 24936, subdivision (d), empowers the general manager to administer the personnel system adopted by the board and "to appoint, discipline or remove all officers and employees subject to the rules and regulations adopted by the board and the labor provisions

---

[1] With regard to damages, respondent further asserts that this case is not a proper class action because no evidentiary hearing was held below to determine the propriety of proceeding as such. It should be noted, of course, that regardless of the class aspects of the case, the individual plaintiffs have asserted monetary claims, and these alone are sufficient to preclude a finding of mootness.

The complaint alleged that the individual employees sued on behalf of all bus drivers in the Transit District, who were too numerous to be joined and who would be adequately represented by the named plaintiffs. Further, it alleged that the union is the bargaining representative for the bus drivers, and sued in that capacity in their behalf.

The questions of law raised are common to the class; the only question of fact is individual damages, and "[t]he mere fact that ultimately each class member will be required to establish his individual amount of damages does not preclude the maintenance of a class action." (*Santa Barbara Optical Co., Inc.* v. *State Bd. of Equalization*, 47 Cal.App.3d 244, 250 [120 Cal.Rptr. 609].) Of course, ordinarily, a hearing is essential to determine whether and how to proceed in the class form under Code of Civil Procedure section 382. (*Bauman* v. *Islay Investments*, 45 Cal.App.3d 797, 800 [119 Cal.Rptr. 681]; *Home Sav. & Loan Assn.* v. *Superior Court*, 42 Cal.App.3d 1006 [117 Cal.Rptr. 485].) However, not only did the parties stipulate to propriety of the class during the hearing on the preliminary injunction, but obvious questions of acquiescence and waiver are also present.

More significantly (in view of the due process notice requirements, which of course could not be satisfied for *absent* class members by stipulation or waiver of the parties), the union was joined as a plaintiff. As bargaining agent for the bus drivers under the very collective agreement challenged, the union is a proper class action representative (*Professional Fire Fighters, Inc.* v. *City of Los Angeles*, 60 Cal.2d 276, 283-284 [32 Cal.Rptr. 830, 384 P.2d 158]; *California Sch. Employees Assn.* v. *Willits Unified Sch. Dist.*, 243 Cal.App.2d 776, 780 [52 Cal.Rptr. 765]; see also Class Action Manual (prepared by Los Angeles Superior Court) § 404, p. 7), and as agent for its members received appropriate notice herein.

■

of this law, whichever are applicable." Section 25051 authorizes the board to negotiate with an appropriate collective bargaining unit to reach agreement on "the terms of a written contract governing wages, salaries, hours, working conditions, and grievance procedures."

The trial court reached its conclusion by applying the rule of construction that specific statutes control general statutes, and that specific provisions relating to a particular subject will govern general provisions which might otherwise, standing alone, be broad enough to include the subject to which the more particular provision relates. (Code Civ. Proc., § 1859; *McGriff* v. *County of Los Angeles,* 33 Cal.App.3d 394, 399 [109 Cal.Rptr. 186]; *Bozaich* v. *State of California,* 32 Cal.App.3d 688, 697 [108 Cal.Rptr. 392].) In the instant case, however, this principle is of little assistance: it might be argued with equal force that the *specific* provision is that restricting wage deductions for tardiness (Lab. Code, § 2928), and the general provisions are those broadly governing the Transit District without reference to such details as oversleep regulations.

The most salient point in support of a conclusion opposite to that of the trial court is that the statutory provisions governing the Southern California Rapid Transit District, the Orange County Transit District, and the San Diego Transit District, contain the precise language that respondents urge us to find by implication here. These Public Utility Code provisions (§§ 30750, subd. (c), 40126 and 90300, subd. (f)), all state, in relation to collective bargaining provisions that: "The obligation of the district to bargain in good faith with a duly designated or certified labor organization and to execute a written collective bargaining agreement with such labor organization covering the wages, hours, and working conditions of the employees represented by such labor organization in an appropriate unit, and to comply with the terms thereof *shall not be limited or restricted by the provisions of the Government Code or other laws or statutes. . . .*" Insofar as the various transit district laws are substantially similar, the absence of such a provision in the Alameda-Contra Costa County law (and in the San Francisco Bay Area, Stockton, and Marin laws) evidences a different intent on the part of the Legislature, even though the laws were enacted at different times. (*City of Port Hueneme* v. *City of Oxnard,* 52 Cal.2d 385, 395 [341 P.2d 318].) The Legislature plainly thought it necessary to include the express language negating other statutory restrictions in the later-enacted provisions of the San Diego, Orange County, and Southern California laws. The absence of such express terms in the other, earlier transit district laws indicates that a different meaning was intended.

Thus, it does not appear that the Legislature intended Alameda-Contra Costa County Transit District labor relations to be governed *only* by the Public Utility Code provisions relating thereto. Rather, the rules and regulations adopted by the board of directors (and administered by the general manager under § 24936 subd. (d)), including those adopted by a resolution approving a collective bargaining agreement, must themselves be promulgated *subject to* the limitations and restrictions of other applicable laws.

## III

The specific question of the applicability of Labor Code section 2928 must therefore be discussed. Two matters are presented for decision: whether the section applies to the Transit District; and, if so, whether it *invalidates section 50 of the collective bargaining agreement.*

█ The first problem invokes the general rule that in the absence of express words to the contrary, public entities are not included within the general words of a statute. (*People* v. *Centr-O-Mart,* 34 Cal.2d 702, 703 [214 P.2d 378]; *Estate of Miller,* 5 Cal.2d 588, 597 [55 P.2d 491].) However, this broad statement has received narrower application, so that governmental agencies are excluded "from the operation of general statutory provisions *only if their inclusion would result in an infringement upon sovereign governmental powers.* 'Where . . . no impairment of sovereign powers would result, the reason underlying this rule of construction ceases to exist and the Legislature may properly be held to have intended that the statute apply to governmental bodies even though it used general statutory language only.' " (*City of Los Angeles* v. *City of San Fernando,* 14 Cal.3d 199, 276-277 [123 Cal.Rptr. 1, 537 P.2d 1250]; italics added; quoting *Hoyt* v. *Board of Civil Service Commrs.,* 21 Cal.2d 399, 402 [132 P.2d 804].)

The court below, citing *Nutter* v. *City of Santa Monica,* 74 Cal.App.2d 292 [168 P.2d 741], concluded that application of Labor Code section 2928 to invalidate section 50 of the agreement would impinge upon the sovereign powers of the Transit District and thus violate the above prescription. "Serious interference with the Board's management of personnel problems in the District would result, and the ability of the District to perform its function of providing reliable on-schedule transportation to the public would be damaged."

Labor Code section 2928 is part of what has been termed the "established policy of our Legislature of protecting and promoting the right of a wage earner to all wages lawfully accrued to him." (*City of Ukiah* v. *Fones,* 64 Cal.2d 104, 108 [48 Cal.Rptr. 865, 410 P.2d 369].) Although public entities are exempted by statute from some code provisions relating to wages (e.g., Lab. Code, §§ 213, subd. (b), 220), Labor Code section 2924 (grounds for employer termination of employment before end of term), a part of the same division and chapter, has been applied to a public entity. (*Holtzendorff* v. *Housing Authority,* 250 Cal.App.2d 596, 609-610 [58 Cal.Rptr. 886].)

Two factors belie the assertion of infringement of sovereign powers in the present case. The very fact that wages, hours, and working conditions are to be set by the collective bargaining process distinguishes this case from *Nutter, supra,* relied upon by the trial court. In *Nutter,* the court characterized the relevant Labor Code sections as relating "to the field of industry in which employer-employee relationships are fixed by contract" (74 Cal.App.2d 292, 297), and held the general labor statutes inapplicable to a governmental entity based upon this distinction.

In the present case, the Transit District clearly retains the right to establish rules and regulations governing employee discipline (as do private employers generally). However, insofar as it is required to negotiate in good faith with the union on wages, salaries, hours, working conditions and grievance procedures (Pub. Util. Code, § 25051), it does *not* have any power to unilaterally adopt rules or regulations affecting such matters, as they are properly subjects of collective bargaining. Labor Code section 2928 relates to deductions from wages. The Transit District implicitly acknowledged its belief that this matter was beyond its sovereign powers as to discipline when it submitted the subject to the bargaining process. In this it was correct, and the application of the statute to the Transit District therefore, could not infringe upon any sovereign power.

Labor Code section 2928 permits deduction from wages for time actually missed due to oversleep. Moreover, the new collective agreement, providing for suspension of drivers who oversleep, indicates that the oversleep rules of section 50 were not necessary to the continued reliable functioning of the Transit District. Respondent does not offer any argument that the new regulation (consistent with Lab. Code § 2928) has impaired its performance, or that the new format has "injuriously affect[ed] the capacity to perform state functions." (Nutter, *supra,* 74 Cal.App.2d at p. 300.)

However, it does not follow that, because the subject of penalty point provisions was not within the sovereign powers of the Transit District, it was necessarily within the scope of permissible agreement between the parties. ■ As noted earlier, full payment of accrued wages is an important state policy, enacted for protection of employees generally. As such, it is not to be avoided by the terms of a private agreement. (Civ. Code, § 3513; *Benane v. Internat. Harvester Co.,* 142 Cal.App.2d Supp. 874, 878-879 [299 P.2d 750].) The parties were therefore without authority to agree to any provision in violation of the statute.[2]

## IV

■ The final question presented, then, is whether section 50 of the collective bargaining agreement was contrary to Labor Code section 2928. The court below held that "Plainly, if Labor Code § 2928 applies to § 50, the latter must be declared void." With this we must agree.

Respondent argues, as it did below, that Labor Code section 2928 applies only to "deductions from wages," and, giving those words their ordinary meanings, section 50 of the agreement does not fall within the prohibition because (1) sitting penalty point is not working; (2) therefore, no wages were earned; and (3) there is thus no deduction from wages. Respondent urges that the oversleep provisions are "properly characterized as requiring a late employee to wait for further employment (as in a hiring hall). . . ."

This argument is without merit. Employees of the Transit District who are not sitting penalty point are paid full compensation for performing the same duties, namely, waiting for assignment at the dispatching area in full uniform. Respondent thus recognizes that such duties constitute compensable work, and it is undisputed that the employees sitting penalty point do so at the requirement of the Transit District. In the absence of section 50 of the agreement, employees waiting for assignments at the Transit District's behest would be compensated for such work. The effect of section 50, therefore, is to withhold wages for work actually performed. Such a provision violates the plain prohibition of Labor Code section 2928, and constitutes a deduction from wages, as found by the trial court.

---

[2]*United Air Lines, Inc. v. Industrial Welfare Com.,* 211 Cal.App.2d 729 [28 Cal.Rptr. 238], is cited by respondent in support of its argument that the terms of the collective bargaining agreement, negotiated pursuant to Public Utilities Code section 25051, should control over conflicting state law. However, the case is not persuasive, as it involved federal preemption of state law, not at issue here.

Section 50 was therefore invalid, and the affected employees are entitled to the wages withheld by the Transit District for time spent sitting penalty point without pay. The precise amounts due to particular employees are to be determined by the trial court on remand.

The judgment is reversed and the cause remanded to the superior court to determine damages in accordance with this opinion.

Rattigan, J., and Christian, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 15, 1976.