[Civ. No. 44416. Second Dist., Div. Two. Nov. 7, 1974.]

HOME SAVINGS AND LOAN ASSOCIATION, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LAWRENCE H. DEUTSCH et al., Real Parties in Interest.

**COUNSEL**

McKenna, Fitting & Finch, McKenna & Fitting, Aaron M. Peck, Roger P. Heyman and Leo J. Weinstein for Petitioner.

No appearance for Respondent.

Lawrence H. Deutsch, in pro. per., Robert L. Finkel and David Daar for Real Parties in Interest.

Sheppard, Mullin, Richter & Hampton, George R. Richter, Jr., Pierce T. Selwood, Joseph M. Malinowski, Styskal, Wiese & Melchione, Alvin O. Wiese, Jr., Gibson, Dunn & Crutcher and Robert S. Warren as Amici Curiae on behalf of Petitioner.

## OPINION

**FLEMING, J.**—Home Savings and Loan Association, defendant in a class action for damages and declaratory relief arising from loan-agreement late charges,[1] seeks to prohibit the superior court from determining the substantive validity of claims of the named plaintiffs, Lawrence and Rita Deutsch, prior to a determination of the suitability of the action as a class action and determination of the composition of the class, and prior to notification of members of the class of the pendency of the action.

We have concluded the sequence of events ordered by the superior court contravenes sound rules of procedure and unfairly prejudices defendant Home, and, accordingly, we issue the writ.

### THE COMPLAINT

Filed in July 1973 by the law firm of plaintiff Lawrence Deutsch, the complaint alleges that the Deutsches bring the action on behalf of themselves and all persons similarly situated who borrowed money from Home and executed promissory notes secured by trust deeds to real property. The note and accompanying loan agreement by their terms impose an interest rate increase of 2 percent per year on the entire unpaid balance of the debt so long as payment of any installment remains in default. Within the last four years the Deutsches paid late charges of $530.88.[2] Plaintiffs estimate that more than 10,000 persons paid similar late charges during the same four-year period. The complaint asserts the late charges constitute a penalty within the meaning of Civil Code section 1670 and a controversy exists between plaintiffs and Home over the validity of the charges. The

---

[1]See *Garrett* v. *Coast & Southern Fed. Sav. & Loan Assn.,* 9 Cal.3d 731 [108 Cal.Rptr. 845, 511 P.2d 1197].

[2]The complaint pleads late charges of $822.28, but the Deutsches have since lowered their claim.

prayer asks damages of $530.88, interest for the Deutsches, damages to the class according to proof, a declaration that the late charge provisions are void, and an award to plaintiffs of $250,000 for costs and attorneys' fees.

Seven other comparable class-action suits on late charges are pending against Home in this and other jurisdictions.

## TRIAL COURT'S ORDER

On motion of the Deutsches the trial court, through a special department designed to conduct pretrial class action proceedings pursuant to a standardized Class Action Manual prepared by the Los Angeles Superior Court, entered an order bifurcating the trial and explaining its order thus: "It is obvious that late charge provisions are a great and continuing concern to thousands of borrowers in the State of California as well as to the lending industry. Code of Civil Procedure Section 1048(b)[3] permits the Court to order a separate trial of any separate issue or issues when such trial will be conducive to expedition and economy. The Court finds that to be the case here. Section 441 of the Class Action Manual also authorizes an early trial of the issue of Defendant's liability.[4] The Court feels that it would be in the interest of justice to have a bifurcated liability trial herein to resolve, as quickly as possible, the various liability questions raised herein. Such determination will be of great benefit to borrowers and the lending industry. Also the public and the Courts will be benefited as there are a number of class action late charge cases pending throughout the state. Therefore, Defendant's objections to this Motion are overruled."

The court ordered early trial on substantially the following issues: Whether the Deutsches' late charges were invalid penalties. Whether the Deutsches may recover $530.88 plus attorneys' fees under their note.

---

[3]Code of Civil Procedure section 1048, subdivision (b): "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any cause of action, including a cause of action asserted in a cross-complaint, or of any separate issue or of any number of causes of action or issues, preserving the right of trial by jury required by the Constitution or a statute of this state or of the United States."

[4]Class Action Manual section 441: "Any named party may move, pursuant to CCP Sec. 597, that the court order an early trial of the class issues which have not been earlier resolved by order or stipulation. The motion must include early trial of all still unresolved class issues.

"Any named party may move, pursuant to CCP Sec. 598, that the court order an early trial of the issue of the defendant's liability.

"The court on its own motion may order an early trial on either the class issues or liability."

Whether Home's affirmative defenses (account stated, due process of law, administrative authorization, prospective effect of *Garrett* ruling) bar the Deutsches' recovery. Whether Home is entitled to offset damages caused by the Deutsches' late payments. The court concluded, "After trial of those issues, this matter shall be returned to this Department for all further procedures under the Class Action Manual, if any."

## DISCUSSION

A primary procedural question in a class action is, who are members of the class? Prompt and early determination of the class is essential because until the composition of the class has been determined defendants cannot tell what the action involves, and until members of the class receive notice of the action they will not be bound by any judgment in the action. Once the composition of the class has been determined, its members are entitled to appropriate notice of the pendency of a class action that will affect their interests. Notice is particularly requisite when those purporting to represent the class seek payment of substantial compensation from all members of the class in the event of success. After the members of the class have been properly notified of the action, they are required to decide whether to remain members of the class represented by plaintiffs' counsel and become bound by a favorable or unfavorable judgment in the action, whether to intervene in the action through counsel of their own choosing, or whether to "opt out" of the action and pursue their own independent remedies, such as negotiation with defendants, initiation of their own action, or intervention in some other action.

At bench, the trial court's order required defendant to go to trial on the major substantive issues in the lawsuit before any determination of (A) the suitability of the action as a class action, (B) the membership of the class, and (C) the form of notice to be given the members of the class. The trial court's order left hanging in the air the resolution of such critical questions as, (1) the typicality of the representative parties, (2) their adequacy to fairly represent the class, (3) the impracticability of separate actions or of direct intervention by individual members of the class, (4) the possibility of inconsistent adjudication as a result of separate actions by individual members of the class, (5) the necessity to resolve common questions of law or fact by means of class action, (6) the identity of the victims of the improperly exacted late charges, (7) the period of time the cause of action for improperly exacted late charges extends back, (8) the effect of assignment, renegotiation, assumption, or payment of a loan on which late charges have been exacted, (9) the effect of foreclosure or sale under deed of trust. Resolution of most of these questions is prerequisite to the determination of the suitability of the action as a class action, to de-

termination of the composition of the class, and to appropriate notification of the members of the class—all to the goal that the substantive issues may be authoritatively and finally adjudicated.

The critical reason for notification of members of the class on whose behalf a class action has been brought is that notification makes possible a binding adjudication and an enforceable judgment with respect to the rights of the members of the class. Absent such notification no member of the class need be bound by the result of the litigation. Defendant, however, could find itself in an entirely different position. Under the doctrine of collateral estoppel a defendant who litigates and loses issues tendered in a class action filed by an individual member of the class may be estopped in subsequent litigation with other members of the class to deny the validity and binding effect of the judgment against him in the first action. Contrariwise, if defendant prevails in the first cause of action involving merely individual members of the class, no other members of the class need be bound by the outcome, for they were not parties to the lawsuit and received no notification about it. (Rest., Judgments, § 93; *Blonder-Tongue* v. *University Foundation* (1971) 402 U.S. 313 [28 L.Ed.2d 788, 91 S.Ct. 1434]; *Bruszewski* v. *United States* (3d Cir. 1950) 181 F.2d 419; *Bernhard* v. *Bank of America,* 19 Cal.2d 807 [122 P.2d 892]; *Nevarov* v. *Caldwell,* 161 Cal.App.2d 762 [327 P.2d 111].) In the last case Ashburn, J., observed with respect to multi-victim accident litigation: "[A] defendant who obtains a favorable judgment, or 10 of them, cannot use those judgments against other claimants because the want of mutuality would spell absence of due process if the judgments were pleadable in bar or estoppel. But the plaintiff in the eleventh case is fortunate enough to establish liability and the defendant is confronted by a conclusive adjudication of its own negligence in the next 10 or 20 cases, —this being due to the fact that mutuality is not necessary and it has had its day in court, in fact 11 of them (none of which resulted adversely except the eleventh). This looks like the scales of justice are weighed in favor of plaintiff." (P. 768.)

The vice in the procedure followed by the trial court is that it allows so-called "one-way intervention," a procedure under which potential members of the class can reserve their decision to become part of the class until the validity of the cause asserted by the named plaintiffs on behalf of the class has been determined. While one-way intervention has obvious attractions for members of the class on whose behalf an action has been brought in that it creates for them a no-lose situation, for a defendant it holds the terrors of an open-ended lawsuit that cannot be defeated, cannot be settled, and cannot be adjudicated. To him it presents a classic no-win option.

We recognize the conflicting practical considerations that surround decisions formulating class action procedures. Yet if the class action is to remain effective, members of the class must receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." (Fed. Rules of Civ. Proc., rule 23(c)(2).) This requirement also serves the interest of the potentially bound defendant, who when he enters upon class litigation is entitled to a judgment that will be meaningful. Both these objectives can be achieved by means of proper notice, for it is notice that makes the class action viable. Additionally, notice prevents incompetent or unrepresentative plaintiffs from preempting for themselves total representation of an unnotified class and likewise prevents collusive suits that could bind members of the class to unwanted judgments unnecessarily limiting the scope of their recovery.

We recognize that "[i]f the class action is to prove a useful tool to the litigants and the court, pragmatic procedural devices will be required to simplify the potentially complex litigation while at the same time protecting the rights of all the parties." (*Vasquez* v. *Superior Court,* 4 Cal.3d 800, 820 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513].) But the pragmatic device chosen by the trial court in this instance—to postpone determination of the suitability of the action as a class action and to dispense with notice to members of the class prior to litigation on the merits—fails to protect the defendant's right to a fair trial and to due process of law. The procedure equally fails to protect the rights of absent members of the class.

Code of Civil Procedure section 1048, subdivision (b), in no way suggests that it was designed to permit one-way intervention in class-action suits. The federal class action rule, rule 23, whose guidance we have been urged to follow in the absence of state court precedent (*La Sala* v. *American Sav. & Loan Assn.,* 5 Cal.3d 864, 872 [97 Cal.Rptr. 849, 489 P.2d 1113]), has been interpreted by the United States Supreme Court to disallow one-way intervention. We quote from *American Pipe & Construction Co.* v. *Utah,* 414 U.S. 538, 545-549 [38 L.Ed.2d 713, 722-724, 94 S.Ct. 756] (fns. omitted): "[Rule 23] contained no mechanism for determining at any point in advance of final judgment which of those potential members of the class claimed in the complaint were actual members and would be bound by the judgment. Rather, '[w]hen a suit was brought by or against such a class, it was merely an invitation to joinder—an invitation to become a fellow traveler in the litigation, which might or might not be accepted.' 3B J. Moore, Federal Practice ¶ 23.10[1], p. 23-2603 (2d ed.) Cf. *Snyder* v. *Harris,* 394 U.S. 332, 335; *Zahn* v. *International Paper Co., ante,* at 296 and n. 6. A recurrent source of abuse under the former Rule lay in

the potential that members of the claimed class could in some situations await developments in the trial or even final judgment on the merits in order to determine whether participation would be favorable to their interests. If the evidence at the trial made their prospective position as actual class members appear weak, or if a judgment precluded the possibility of a favorable determination, such putative members of the class who chose not to intervene or join as parties would not be bound by the judgment. This situation—the potential for so-called 'one-way intervention'—aroused considerable criticism upon the ground that it was unfair to allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one. . . .

"Under the present Rule, *a determination whether an action shall be maintained as a class action is made by the court* '[a]s soon as practicable after the commencement of an action brought as a class action . . . .' Rule 23(c)(1). Once it is determined that the action may be maintained as a class action under subdivision (b)(3), the *court is mandated to direct to members of the class 'the best notice practicable* under the circumstances' advising them that they may be excluded from the class if they so request, that they will be bound by the judgment, whether favorable or not if they do not request exclusion, and that a member who does not request exclusion may enter an appearance in the case. . . . Thus, potential class members retain the option to participate in or withdraw from the class action only until a point in the litigation 'as soon as practicable after the commencement' of the action when the suit is allowed to continue as a class action and they are sent notice of their inclusion within the confines of the class." (Italics added.)

In *Eisen* v. *Carlisle & Jacquelin,* 417 U.S. 156 [40 L.Ed.2d 732, 94 S.Ct. 2140], the Supreme Court forbade any inquiry into the merits of the class action before plaintiff had given notice of the action to the class. The court said: "We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, *such a procedure contravenes the Rule by allowing a representative plaintiff to secure the benefits of a class action without first satisfying the requirements for it. He is thereby allowed to obtain a determination on the merits of the claims advanced on behalf of the class without any assurance that a class action may be maintained.* This procedure is directly contrary to the command of subdivision (c)(1) that the court determine whether a suit denominated a class action may be maintained as such 'as soon as practicable after the commencement of [the] action . . . .' " (Pp. 177-178 [40 L.Ed.2d, pp. 748-749].) (Italics added.)

The court then ruled that notice must be given to all members of the class whose names and addresses could be ascertained through reasonable effort. The court emphasized that the purpose of notice was to ensure that the judgment, whether favorable or not, would bind all members of the class who did not request exclusion from the suit. The court thus specifically disapproved the procedure ordered by the trial court in the instant cause, where the court undertook to adjudicate the merits of the class action before determining its appropriateness as a class action and before determining the composition of the class. (*Vasquez* v. *Superior Court,* 4 Cal.3d 800, 820-821 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513].)

Due process of law calls for a certain degree of logic and order in the trial of an action. In the present case, for example, defendant might go through a full-dress trial on the merits and win. Such victory, however, would avail it nothing, for the seven other class-action suits pending against it could each proceed its own way unbound by the outcome of this action.[5] Such a result complies neither with statute nor with common sense. We have already discussed the salutory provisions of rule 23. As a further guide for appropriate procedure in class actions we have been recommended the provisions of the California Consumers Legal Remedies Act. (*Vasquez* v. *Superior Court, supra,* at p. 820.) Civil Code section 1781, subdivision (c) requires the court on motion of any party to hold a hearing on the requisite notice to be given members of the class. That section clearly requires plaintiffs in a class action to prove their status as representatives of a defined class prior to determination of the substantive merits of their claim.

Finally, we note that a defendant in a class action should not be put to trial on the merits of liability prior to the time plaintiff has satisfied the jurisdictional requirements for his action, including among other items a showing of the jurisdictional amount required for suit in the superior court (see Code Civ. Proc., § 89). Doubtless, plaintiffs can make an appropriate showing in this instance, but the point remains that the showing should be made.

---

[5]Of the seven other class-action suits on late charges against Home one is pending in federal district court in the Eastern District of California, and six are pending in California superior courts (three in Los Angeles County, two in Alameda County, one in San Mateo County). Each suit has been filed by different named plaintiffs who are represented by different counsel. In five suits, a named plaintiff also purports to act as counsel for the class. Prayers for damages range from "damages according to proof" up to $2,500,000,000. Requests for attorneys' fees range from "a reasonable fee for legal services rendered" to "$250,000" to "twenty-five percent of the damages and punitive damages."

Let a peremptory writ of prohibition issue restraining the trial court from proceeding to trial on the substantive merits of the cause without prior adjudication of the procedural class-action issues, viz. suitability of the action as a class action, determination of the composition of the class, and appropriate notification of members of the class, all pursuant to guidelines set out in rule 23, Federal Rules of Civil Procedure, and Civil Code section 1781.

Roth, P. J., and Beach, J., concurred.

The petition of the real parties in interest for a hearing by the Supreme Court was denied January 8, 1975. Mosk, J., was of the opinion that the petition should be granted.