[Civ. No. 38186. First Dist., Div. Three. Feb. 14, 1977.]

RICHARD KASS, Plaintiff and Appellant, v.
NEIL YOUNG, Defendant and Appellant.

COUNSEL

Milton Stern, Jr., for Plaintiff and Appellant.

Mitchell, Silberberg & Knupp, Daniel A. Weber, Russell J. Frackman and Goldstein, Barceloux & Goldstein for Defendant and Appellant.

OPINION

DEVINE, J.*—Plaintiff Kass appeals from an order vacating a default judgment in a class action and vacating the default of defendant Neil Young insofar as it relates to a class action, but allowing the default to remain against appellant Young to the extent that defendant as an individual is concerned (judgment to be subject to proof of damages as to plaintiff's individual rights). Appellant Young cross-appeals from the order allowing the limited default to remain. Both sides agree that the case appears to be one of first impression as to the effect of default in an alleged class action.

The complaint alleges that Kass was one of about 14,000 patrons at a "rock" concert on March 31, 1973, at the Oakland Coliseum. Defendant Young was the star performer.[1] He terminated the concert by abruptly walking off the stage. The purchasers of tickets "did not receive the consideration of a full concert performance for which they had paid." Damages are alleged to be about $98,000, including ticket prices, transportation and parking expenses. It is alleged that the entire class of patrons is affected exactly as is plaintiff.

Summons and complaint were served personally on Young on September 30, 1973. His default was entered on November 12, 1973.

At the hearing, Kass testified that about 14,000 were present; that Young walked out in the middle of a song; that everyone stood for a long time clapping and yelling, but Young did not return. Counsel for Kass presented three ticket stubs, one of which was Kass's; he proposed

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]The contract of the ticket purchasers was with the promoter, Bill Graham, who is a named defendant but who is not a party to these proceedings. The cause against appellant Young is on the theory of interference with the contract. Such a cause sounds in tort. (*Kozlowsky* v. *Westminster Nat. Bank,* 6 Cal.App.3d 593, 598 [86 Cal.Rptr. 52].) But this appeal does not have to do with theories relating to the merits.

$91,000 as the amount of damages, calculated by multiplying 14,000 by the median price of $6.50 (tickets were $7.50, $6.50 and $5.50, but there was no evidence of the number sold of each category); he waived (for the whole class presumably) the parking fee item; by silence, he waived (for the class) punitive damages which had been prayed for, based on alleged malice. Read into the record were newspaper accounts which reported that the "jarring" walkoff, a "rip off," a "temper tantrum" occurred about an hour after the concert started, and reported that Young had said he couldn't go on because of repressive action of the security guards. Although at the hearing nothing was made definite about the subject of proof of membership in the class, there was a suggestion by counsel that refunds would be made to those who had retained ticket stubs.

The judge (not the judge from whose order the present appeals are taken) rendered judgment on June 26, 1974, awarding to plaintiff Kass, on behalf of himself and of all others who purchased tickets for the concert, the sum of $91,000; 40 percent of the recovery was awarded to plaintiff's attorney; the whole amount collected was to be deposited in the attorney's trust account; payment was to be made to those who proved to the satisfaction of counsel[2] that they were members of the class (no method of determining the amount to be paid to each is stated; presumably each would be reimbursed his or her actual outlay); the balance unclaimed, after a reasonable time (which was not defined), would be disposed of by the court. There was no provision for notice even by publication.

On October 10, 1974, Young moved to vacate the default and the default judgment. One of the grounds was that the default and the judgment were jurisdictionally defective in that no notice had been given to the alleged class and that no class had been certified. On this ground the vacating order was made and the proposed answer of Young was permitted to be filed. (The answer alleges that Young had substantially completed his performance when he was forced to leave the stage by unnerving disturbance among the audience.)

I. *Vacating of the Default Judgment*

 It was proper to set aside the default judgment because of a jurisdictional deficiency, namely, that there had been no certification of

---

[2]This purported delegation of judicial power, not to a referee or court commissioner under the specified conditions of Code of Civil Procedure sections 640-645, but to counsel, doubtless would invalidate the judgment; but the briefing has centered on the class action aspects of the case.

the asserted class and no provision for notice to the asserted class. ■ A default judgment which is in excess of jurisdiction may be set aside at any time either by motion or an independent action in equity. (*Sullivan* v. *Sullivan,* 256 Cal.App.2d 301 [64 Cal.Rptr. 82].) Although, as was said at the outset, a case involving default judgment in a class action has not been found, it is to be inferred from the cases relating to the necessity for certification and for notice in class actions that the procedures which have been decreed to be mandatory establish these procedures as jurisdictional; wherefore, default judgment rendered without compliance with them is subject to vacation. In *Home Sav. & Loan Assn.* v. *Superior Court,* 42 Cal.App.3d 1006 [117 Cal.Rptr. 485], a peremptory writ of prohibition was issued restraining the trial court from proceeding to trial on the substantive merits of the cause without prior adjudication of the suitability of the lawsuit as a class action, determination of the composition of the class, and appropriate notification to its members. Although the court in that case did not refer to the failure to meet the prescribed procedures as a jurisdictional defect in so many words, nevertheless the facts that it issued a writ which normally at least is employed only to restrain a lower tribunal from exceeding its jurisdiction (*Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715]; 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 39, p. 3813), and that the court in *Home Sav. & Loan Assn.* based its decision in part on the constitutional requirement of due process of law (at pp. 1012, 1014) give evidence that the court did not regard the trial court's failure as mere procedural error.

■ But if *Home Sav. & Loan Assn.* be not authority for the proposition that the mandatory procedures are truly jurisdictional, we do · not hesitate to declare them so. The strong language about the necessity of these procedures and the careful explanations of the reasons for that necessity appearing not only in *Home Sav. & Loan Assn.* but also in the *City of San Jose* v. *Superior Court,* 12 Cal.3d 447 [115 Cal.Rptr. 797, 525 P.2d 701]; *Vasquez* v. *Superior Court,* 4 Cal.3d 800, 820, 821 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]; *Blue Chip Stamps* v. *Superior Court,* 18 Cal.3d 381, 385, 386 [134 Cal.Rptr. 393, 556 P.2d 755], are persuasive of the jurisdictional nature of prejudgment adjudication of the suitability of the action as a class action, determination of the composition, and appropriate notification. The elaborate and scholarly reasoning exhibited in those decisions need not be repeated here, but a few words may be said about the application of the principles established by those authorities to the present case. First, as to the parties: without determination of the proper class and of appropriate notice, the defendant would

be subject not only to judgment in the purported class action but also to suits by individuals acting alone or in other asserted classes. (*Home Sav. & Loan Assn.* v. *Superior Court, supra,* at p. 1012.) ▮ To be sure, defendant Young chose not to answer the complaint; but a party in default is not made subject to unlimited effects of his default. Relief may not be given beyond that prayed for (Code Civ. Proc., § 580); damages except when fixed by contract must be proved (Code Civ. Proc., § 585; *Liberty Loan Corp. of North Park* v. *Petersen,* 24 Cal.App.3d 915 [101 Cal.Rptr. 395]); substantial amendment to the pleading after default is not permitted without second service of process (*Leo* v. *Dunlap,* 260 Cal.App.2d 24 [66 Cal.Rptr. 888]). ▮ In a purported class action, the defaulting defendant should be entitled to have the court either on motion of plaintiff's counsel or on its own motion decide the appropriateness of the class action so that if it truly be suitable and if the necessary notice be given to potential plaintiffs, there will be but a single binding judgment against him. As to potential plaintiffs, the prejudgment procedures are so connected with due process as to be jurisdictional. These persons are entitled to the best practical notice under the circumstances, advising them that they may be excluded from the class if they so request and that they will be bound by the judgment, whether favorable or not, if they do not request exclusion. (*Home Sav. & Loan Assn.* v. *Superior Court, supra,* at pp. 1012, 1013; *American Pipe & Construction Co.* v. *Utah,* 414 U.S. 538, 545-549 [38 L.Ed.2d 713, 722-724, 94 S.Ct. 756].)

Then there is a consideration of damages in this particular case relating to the potential plaintiffs which is rather unique. The representative plaintiff has simply assumed that all 14,000 patrons of the concert were equally damaged and that their damages amounted to the price of the average ticket.[3] It may be that many of the patrons or "fans" of the

---

[3]At the hearing, all that was said about damages was about the ticket prices except that Kass was asked whether "the damage to you was the same as everybody else?" Even to this question, which called for a conclusionary answer, there was no response because of an interruption. The typical class action involves matters of damages which by their very nature are common to a large group and usually produced by sales or practices which have continued for a considerable period, e.g., *Cartt* v. *Superior Court,* 50 Cal.App.3d 960 [124 Cal.Rptr. 376], faulty gasoline; *Daar* v. *Yellow Cab Co.,* 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732], excessive taxi fares; *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, defective freezers; *Hypolite* v. *Carleson,* 52 Cal.App.3d 566 [125 Cal.Rptr. 221], inadequate welfare payments; *Anthony* v. *General Motors Corp.,* 33 Cal.App.3d 699 [109 Cal.Rptr. 254], defective wheels; *La Sala* v. *American Sav. & Loan Assn.,* 5 Cal.3d 864 [97 Cal.Rptr. 849, 489 P.2d 1113], aggrieved borrowers. Whatever disappointment may have been sustained by patrons of a single performance which had been terminated abruptly are not necessarily shared equally by all.

performer who had entertained them for an hour did not regard themselves cheated or that some may have sympathized with his antagonism toward a number of the security guards. In the absence of notice, the single plaintiff has been able to enlist 14,000 persons, willing or not, and wherever they may be, to join his cause. In *Weaver* v. *Pasadena Tournament of Roses,* 32 Cal.2d 833, 835 [198 P.2d 514], four appellants " 'on behalf of themselves and all others similarly situated' " brought an action for damages, seeking $100 for each person (it was estimated there were 1,850) who had been promised that upon standing in line at the box office, he could purchase two tickets to the Rose Bowl. The box office was closed early and tickets were withdrawn from sale and distributed to favored parties. The trial court held that this was not a proper representative action; there was but a large number of individuals, each of whom may or may not have, or care to assert, a claim against defendants. Appellants' complaint, said the court, as we do now, can be regarded as no more than an invitation to such persons as may be interested in joining with them in their action.

■ Nor are the interests of the litigants the only ones to be considered in the prejudgment determination. The representative plaintiff must show that substantial benefit will result both to the litigants and *to the court. (Blue Chip Stamp* v. *Superior Court, supra,* 18 Cal.3d at p. 385; *City of San Jose* v. *Superior Court, supra,* 12 Cal.3d at pp. 458-460; *Collins* v. *Rocha,* 7 Cal.3d 232, 238 [102 Cal.Rptr. 1, 497 P.2d 225]; *Vasquez* v. *Superior Court, supra,* 4 Cal.3d at p. 811.) The resources of the judicial system may be called upon by one or more persons, under Code of Civil Procedure, section 382, when the parties are numerous and it is impracticable to bring them all before the court, for the *benefit of all.*

■ Plaintiff-appellant contends that, although ordinarily class action issues should be resolved before trial, the defendant has admitted the allegations relating to class by failing to answer. In support of this proposition, plaintiff cites *Hypolite* v. *Carleson, supra,* 52 Cal.App.3d 566. *Hypolite* was described by its author as "not a typical case." (At p. 582.) The defendant expressly admitted the pertinent class action allegations in his answer. (At p. 583.) Although the class action issues of the case were not decided until after trial, appeal, reversal and remand, the facts were such that by reason of uncomplicated identification of the parties from existing records, the class action issues were as readily resolved as they could have been at the earlier and proper time. (At p. 582.) ■ Plaintiff-appellant also argues that notice to the class was

provided by the judgment itself by the mandate "that any unclaimed monies remaining in the trust account of counsel is to be disposed of by proper application to this Court for further orders." This is by no means provision for notice. Besides, there was no certification of the class. Certification is essential and in this case it is completely lacking.

Finally, there is the matter of necessary showing that the jurisdictional amount required for suit in the superior court be made (*Home Sav. & Loan Assn.* v. *Superior Court, supra*, at p. 1014) if the action be not sustained in its representative grade.

The order setting aside the default judgment must be affirmed.

## II. *Vacating the Default*

Plaintiff-appellant contends that it was error to set aside the default, which is a ministerial act, simply because this is a class action and that the plaintiff asserting his representative status need not give the defaulting defendant additional time to answer by withholding default until a class is ascertained. Defendant-appellant Young contends that the default as to the class was properly vacated but it was error to allow the default to stand as to the individual plaintiff because there can be but one judgment, and that if plaintiff were to proceed as an individual, his claim would fall within the jurisdiction of the municipal court. ■ We agree with plaintiff-appellant that the default should not have been set aside at all. Although service of summons was the subject of controversy, the judge, after hearing the motion to vacate, concluded that defendant had flouted the process of the court. (There was evidence that Young tore up the summons and complaint.) The default, in our opinion, is an indivisible thing. The defendant has chosen not to reply. To set the default aside would, as plaintiff-appellant says, give to the defendant time in addition to that specified in the summons. Courts, out of respect to their own dignity, cannot permit parties to choose, without peril to themselves, to ignore the court's own process. It has been held that an action which is described in the pleadings as a class action remains such an action unless and until the court decides that it is one which is unsuitable for prosecution as a class action. (*Kahan* v. *Rosensteil*, 424 F.2d 161, 169; *Gaddis* v. *Wyman*, 304 F.Supp. 713, 715.)[4]

---

[4]The two federal cases do not involve defaults, but they hold that as to possible settlement or compromise a class action remains such until a contrary determination is made.

Ordinarily, if a default were allowed to remain, the vacating of a default judgment would be meaningless, because the plaintiff would be entitled at once to a renewed judgment. (*Cumberpatch* v. *Nolan,* 125 Cal.App.2d 205 [270 P.2d 540, 271 P.2d 519].) But in the case of an asserted class action, there still must be decided, following default, as a jurisdictional matter, the suitability of the lawsuit as a class action as set forth under heading I. This is so because the rights of other persons, potential plaintiffs, must be canvassed, which is not so in the ordinary action; because the defendant, although deprived of his right to respond on the merits to the cause of action as stated in the complaint, is entitled to protection against two or more judgments of which but one would be rendered in the instant case; and because the courts must, for the benefit of all litigants, protect themselves from the unnecessary multiplication of lawsuits on the one hand and from being used almost purposelessly save for the compensation of counsel. The order vacating the default is reversed. The default will remain. The order allowing the filing of the purported answer by defendant is reversed.

### III. *Further Proceedings*

So far as the individual plaintiff is concerned, his case may proceed following determination of the propriety of the class action. Perhaps it will have to be removed to the municipal court. If the cause proceeds as a class action, there will, of course, be but one judgment.

As was said at the outset, case law on the subject of defaults in class actions seems to be nonexistent. In our opinion, the defendant has lost his rights to defend on the merits of the action if the condition for class action be fulfilled. But the trial court, by reason of its authorities cited under heading I, must decide upon the suitability of the cause as a class action: whether it is manageable as such, whether the true purpose of a class action will be served, who the members of the class shall be, and if a class be certified, what notice shall be given. To be sure, in making inquiry into these matters, the court's scrutiny necessarily will come close into taking into account the merits of the case itself. But the court will observe a distinction, narrow though it may be, between the two subjects. The court will be concerned with such questions as: potential recovery to the individuals making up the asserted class; whether this recovery would be small in comparison with the time and expense consumed in distribution (*Blue Chip Stamp* v. *Superior Court, supra,* 18 Cal.3d at p. 386); whether the court's resources would really be employed for the benefit of the 14,000 or mainly for the class action attorney (at p. 386;

*City of San Jose* v. *Superior Court, supra,* 12 Cal.3d at p. 462); whether the action would have a beneficial deterrent effect; what likelihood there is that individual patrons would be able to prove or would care to assert their participation at the concert and any resulting damages. These and other questions the court must answer in order to decide whether the lawsuit is to proceed as a class action.

The order vacating the default judgment is affirmed. The order setting aside the default and permitting the filing of defendant's answer is reversed. The cause is remanded for further proceedings in accordance with the views expressed herein. Costs on appeal to be borne one-half by each party.

Scott, Acting P. J., and Good, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.