[Civ. No. 3583. Fifth Dist. Apr. 18, 1978.]

UNION MUTUAL LIFE INSURANCE COMPANY,
Petitioner, v.
THE SUPERIOR COURT OF KERN COUNTY,
Respondent;
BOBBY RAY SCOTT, Real Party in Interest.

### COUNSEL

Wagy, Bunker, Hislop & Lewis, Bruce F. Bunker, Pillsbury, Madison & Sutro, Harlan M. Richter, Walter R. Allan and Bernard Zimmerman for Petitioner.

No appearance for Respondent.

William M. Shernoff for Real Party in Interest.

### OPINION

**TUTTLE, J.\***—Petitioner Union Mutual Life Insurance Company (hereafter referred to as Union Mutual) seeks a writ of prohibition to restrain respondent superior court from enforcing an order requiring response to certain interrogatories propounded during pretrial discovery. Union Mutual alleges that the interrogatories are irrelevant to the pending litigation and, in any event, are unduly burdensome. Union Mutual also contends that the imposition of sanctions for its refusal to answer the interrogatories was an abuse of discretion.

---

*Assigned by the Chairperson of the Judicial Council.

We conclude that some of the discovery ordered was unreasonably broad and burdensome, and that the sanctions should not have been imposed.

## STATEMENT OF FACTS

On May 7, 1976, real party in interest Bobby Ray Scott (hereafter referred to as real party) filed a civil complaint in respondent superior court (Kern County Super. Ct. action No. 141012) against Union Mutual and the Automobile Club of Southern California (hereafter referred to as Auto Club). Real party alleged that on March 1, 1969, Union Mutual issued to Auto Club a group insurance policy which contained, among other things, provisions pertaining to long-term disability employee insurance. Under these provisions if any employee covered by the group policy became totally disabled by injury or sickness during the term of the policy Union Mutual agreed to pay the totally disabled employee a monthly benefit for a specified period of time, regardless of whether the group policy was terminated subsequent to the occurrence of the disability. The appropriate monthly benefit for a totally disabled person was to be determined as follows: A base amount was established for the employee, depending upon the employee's classification, and subtracted from this amount was a "monthly benefit reduction." Included within the "monthly benefit reduction" were amounts the employee received under any workers' compensation law and under the federal Social Security Act. The policy also contained the following proviso which forms the basis for the controversy underlying this litigation: "If an Insured Employee becomes entitled to receive Monthly Benefits under the Policy, the amount of his benefit will not be reduced due to a change in the Federal Social Security Act so long as the Policy is continued and remains in force."

Real party further alleged, in substance, that he purchased this long-term disability employee insurance while he was an employee of Auto Club; that he was issued the appropriate certificate of insurance; that during the time he was an employee of Auto Club and while the group policy in question was in effect he became totally disabled and commenced receiving the appropriate disability benefit, which included a proper reduction for the amount of money he was receiving under the federal Social Security Act; that thereafter, on May 31, 1973, the group insurance policy issued by Union Mutual to Auto Club was terminated; and that after that date of termination, although he still received a monthly disability payment from Union Mutual, the amount he received

was reduced by an amount equal to the increase in benefits he received under the federal Social Security Act as a result of a change in that federal law. Real party alleged that this reduction in the benefits by Union Mutual because of the increase in real party's social security benefits violated the terms of the above quoted proviso; real party averred that Union Mutual had erroneously and wrongfully reduced his benefits.

Real party prayed for declaratory relief as to whether his interpretation of the policy was correct and for compensatory damages for breach of contract. Real party additionally alleged that Union Mutual had falsely and fraudulently represented to him, contrary to the language of the insurance policy, that it could reduce his monthly benefit in an amount equal to the increase in real party's social security benefits; for this deceit real party sought both compensatory and punitive damages.

Furthermore, in the complaint real party inserted allegations relating to a class action which, in pertinent part, read as follows (herein quoted are paragraphs IX and X of the complaint):

"IX.

"This action is brought on behalf of the named plaintiff individually, and as a representative of all persons similarly situated in the State of California who are, or were, employed by the Automobile Club of Southern California and who purchased and were covered by defendant, UNION MUTUAL's Group Long Term Disability policy number 15448 and who subsequently were (1) classified as totally disabled and began receiving total disability benefits under said policy; (2) and at all times since being classified as totally disabled have been on continuous claim status and receiving a monthly indemnity to the present date and continuing; (3) and have also become classified as totally disabled under the Federal Social Security Act and receiving continuous disability benefits thereunder; (4) and who are having their monthly disability indemnities payable by defendants reduced by defendants due to the increased Social Security Benefits passed by the Congress of the United States and enacted into law.

"X.

"Plaintiff is informed and believes and alleges upon said information and belief that other similarly situated plaintiffs exists [sic] as described

in Paragraph IX above who are receiving monthly disability indemnities pursuant to a similar 'Group Long Term Disability Employee Insurance' policy containing the IDENTICAL policy provision with the sole exception being that said plaintiffs are employees of a different employer who engaged in the said 'Group Policy' for the benefit of its employees. Said other employers and employees are located within the State of California and also within other states of the United States. Plaintiff is informed and believes, and therefore alleges that these plaintiffs are likewise having the monthly disability benefits payable by defendant wrongfully and erroneously reduced by defendant. Pending discovery, and order of the Court, plaintiff asks permission to amend his complaint to include such various sub-classes that the Court may deem appropriate under the circumstance."

After Union Mutual filed an answer denying all of the material allegations of the complaint, it received from real party a set of interrogatories, the following questions of which Union Mutual objected to and did not answer:

"DEFINITIONS: The term 'master agreement' as used in these interrogatories means a group long term disability employee insurance agreement such as policy #15448 issued to the Automobile Club of Southern California (hereinafter referred to as the 'Auto Club') and any similar master agreement pertaining to other groups which provide that the amount of the employee's benefits thereunder will not be reduced 'due to a change in the Federal Social Security Act as long as the policy is continued and remains in effect.' "

"9. What is the name and last known address (and telephone number, if known) of each person covered by the certificates issued pursuant to the master agreement with the Auto Club?

"10. For each of the persons listed in interrogatory 9 above, indicate the following:

"(a) The total amount of the social security disability increases deducted from each person's Union Mutual disability benefits after the termination of the master agreement between Union Mutual and the Auto Club through November 1, 1976.

"(b) The date and amount of each separate deduction.

"21. Please list all other groups within the State of California which have entered into a master agreement (such as the one described in the preamble and definition to these interrogatories) and have had said master agreement terminated after January 1, 1969.

"22. For each group which is listed in interrogatory 21 above, please state the following:

"(a) The person, business entity or other group designation, together with the corresponding master agreement number.

"(b) The date upon which each said master agreement was issued.

"(c) The date upon [which] each said master agreement was terminated.

"23. For each group listed in interrogatory 22 above, who subsequently had their master agreement terminated, please state the following:

"(a) The names and last known addresses (and telephone numbers, if known) of each person covered by a certificate pursuant to each said master agreement who had his or her increases in social security disability benefits deducted from their Union Mutual disability benefits after the master agreement between Union Mutual and their employing entity had been terminated.

"24. For each person listed above, please indicate the following:

"(a) The total number of social security disability increases deducted from each person's Union Mutual disability benefits after the termination of the master agreement between Union Mutual and their employing entity through November 1, 1976.

"(b) The date and amount of each separate deduction.

"25. Please list all other groups within the United States, (excluding California) which have entered into a master agreement (such as the one described in the preamble and definitions to these interrogatories) and have had said master agreement terminated after January 1, 1969.

"26. For each group which is listed in interrogatory 25 above, please state the following:

"(a) The person, business entity or other group designation, together with the corresponding master agreement number.

"(b) The date upon which each said master agreement was issued.

"(c) The date upon [which] each said master agreement was terminated.

"27. For each group listed in interrogatory 26 above, who subsequently had their master agreement terminated, please state the following:

"(a) The names and last known addresses (and telephone numbers, if known) of each person covered by a certificate pursuant to each said master agreement who had his or her increases in social security disability benefits deducted from their Union Mutual disability benefits after the master agreement between Union Mutual and their employing entity had been terminated.

"28. For each person listed above, please indicate the following:

"(a) The total number of social security disability increases deducted from each person's Union Mutual disability benefits after the termination of the master agreement between Union Mutual and their employing entity through November 1, 1976.

"(b) The date and amount of each separate deduction."

Union Mutual objected to answering interrogatory 9 at that time on the grounds that the information requested was relevant to the issues of the lawsuit only in the event a determination was made that the lawsuit could proceed as a class action. Also, as to interrogatory 9, Union Mutual stated that it did not have the information requested in its records and that it could only identify persons covered at the time the policy was purchased.

With regard to interrogatory 10, Union Mutual objected to answering the interrogatory at that time on the grounds that: "[T]he information requested is relevant to the issues of this lawsuit only in the event a determination is made that this lawsuit proceed as a class action. Union Mutual further objects to answering this interrogatory on the grounds that to do so would be unduly burdensome and oppressive. The information requested on currently pending claims can be determined

by a computer run. The information for older claims can only be determined after a manual review of each claim file, which file could be located either in Portland, Maine, in storage or in Union Mutual's Los Angeles offices."

As to interrogatories 21 through 28, Union Mutual objected to answering them on the grounds that ". . . the information requested therein is not relevant to the subject matter of this lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence in this lawsuit."

On January 27, 1977, real party noticed a motion in respondent superior court to compel Union Mutual to answer all of the above interrogatories. After Union Mutual filed its opposition to this motion, the matter was heard before Judge Joseph F. Noriega on February 24, 1977; the motion was granted that same day, and Union Mutual was directed to answer all of the pending, unanswered interrogatories; the court further imposed a $300 sanction on Union Mutual for its refusal to answer the interrogatories.

On May 19, 1977, Union Mutual noticed a motion in respondent superior court for reconsideration of the order directing it to answer the interrogatories in question. On July 8, 1977, the motion for reconsideration was heard by Judge Noriega and denied. This petition for a writ of prohibition followed.

DISCUSSION

The interrogatories objected to may be classified into three groups. "Group I": interrogatories 9 and 10, which are confined to employees of Auto Club. "Group II": interrogatories 21, 22, 23 and 24 relating to employers within California other than Auto Club, who operated under master agreements identical to the one between Union Mutual and Auto Club, and who had the agreements terminated after January 1, 1969. "Group III": interrogatories 25, 26, 27 and 28 relating to employers in states other than California who were operating under identical master agreements that were terminated after January 1, 1969.

It appears from the papers on file and comments at oral argument that the parties have mutually worked out their differences on the Group I interrogatories. Pursuant to the parties' understanding, the order of respondent superior court compelling Union Mutual to answer interrog-

atories 9 and 10 should not be extended beyond requiring Union Mutual to provide real party with the name and address of each Auto Club employee presently (when the interrogatories are answered) receiving disability benefits from Union Mutual, the monthly amount each such employee received from Union Mutual at the time the master agreement issued to Auto Club was terminated on May 31, 1973, and the monthly amount each such employee presently is receiving from Union Mutual.

■ The Group II and Group III interrogatories differ from the Group I interrogatories in that they do not seek information in support of a class action alleged in the complaint; rather, the discovery is sought to enable real party to amend the complaint to state a class action relating to long-term employee disability policies issued by Union Mutual to business entities other than Auto Club, once the necessary information is obtained. The Group II interrogatories differ from the Group III interrogatories in that Group II deals with business entities in California, other than Auto Club, which were issued such policies, whereas Group III deals with business entities outside of California which have had such policies.

Part of Union Mutual's contention that the information requested in Group II and Group III is not relevant to the subject matter of the lawsuit appears to rest upon the proposition that, since no California or nationwide class action was alleged in the complaint, there was no subject matter to which the material could be relevant. However, it is well established that relevancy of the subject matter does not depend upon a legally sufficient pleading, nor is it restricted to the issues formally raised in the pleadings. Relevancy of the subject matter is determined by the potential as well as actual issues in the case (*Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161, 174 [84 Cal.Rptr. 718, 465 P.2d 854]); discovery is proper if it would be material to any possible issue raised by new allegations in an amended complaint (*McClatchy Newspapers* v. *Superior Court* (1945) 26 Cal.2d 386, 395 [159 P.2d 944]; *City of Los Angeles* v. *Superior Court* (1973) 33 Cal.App.3d 778, 782 [109 Cal.Rptr. 365]; see *Budget Finance Plan* v. *Superior Court* (1973) 34 Cal.App.3d 794, 798 [110 Cal.Rptr. 302]; *Los Angeles Cemetery Assn.* v. *Superior Court* (1968) 268 Cal.App.2d 492, 493-494 [74 Cal.Rptr. 97]). In the case at bench, the complaint makes clear real party's intention to amend the complaint to include the class actions in question if a basis therefor is disclosed by discovery. There is no claim that real party is acting other than in good faith. Under these circumstances, the

scope of the discoverable information should not be narrowed merely because no California or nationwide class action was alleged in the complaint.

The real dispute in this proceeding centers upon the Group III interrogatories which ask for information relating to potential class members who are not residents of California; Union Mutual asserts that the major issue is whether a state court has jurisdiction to entertain a national class action when nonresident members of the class have no contacts or affiliating circumstances with the forum state. Union Mutual claims that the Group III interrogatories are irrelevant since real party cannot maintain a national class action in a state court because of the jurisdictional barriers.

We do not agree that the issue here presented is the validity of a so-called national class action. It is true that real party seeks discovery to obtain information which he hopes will permit amendment of his complaint to state a class action for the benefit of persons who are not residents of this state. But as noted above, California law permits the use of discovery to get information necessary to plead a cause of action. Doubts as to whether particular matters will aid in a party's preparation for trial should generally be resolved in favor of permitting discovery; this is especially true when the precise issues of the litigation or the governing legal standards are not clearly established. Discovery should be denied on the grounds of "irrelevancy" only where there is no reasonable possibility that the answers sought by a given line of questioning will lead to the discovery of admissible evidence or be helpful in preparation for trial. (*Pacific Tel. & Tel. Co.* v. *Superior Court, supra,* 2 Cal.3d 161, 172-173.)

The legal standards governing national class actions in state courts are not clearly established. (See *Anthony* v. *General Motors Corp.* (1973) 33 Cal.App.3d 699, 708 [109 Cal.Rptr. 254].) There may be many possible combinations of facts involving nonresidents which might come under the rubric "national class action." Because of the lack of certainty in the law on the subject of national class actions, the determination of the validity of any such class action should await a more specific presentation of the facts after all relevant discovery on the point has been completed.

In the case at bench, real party should not be denied the opportunity to obtain further information simply because of the uncertainty as to

whether or not such information will enable him to bring a national class action. In essence, Union Mutual asks us to declare that the discovery sought in the Group III interrogatories is improper because the purpose of it is to obtain information which will be of assistance to real party in amending his complaint to state a cause of action for a "national class action." This is the precise reason why the discovery should be permitted. Without more complete information, we cannot say that there is no reasonable possibility of real party stating a class action with respect to at least some of the nonresidents.

Moreover, the premature determination of the validity or invalidity of a class action is not desirable. (Cf. *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 820-821 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]; *Wechsler* v. *Laskey-Weil, Inc.* (1974) 42 Cal.App.3d 728, 730 [117 Cal.Rptr. 237]; *Jensen* v. *Allstate Ins. Co.* (1973) 32 Cal.App.3d 789, 793 [108 Cal.Rptr. 498].) ■ In this connection, it has become firmly established that issues pertaining to class certification should be litigated at special pretrial proceedings for that purpose. (*Kass* v. *Young* (1977) 67 Cal.App.3d 100, 105 [136 Cal.Rptr. 469]; *Travelers Ins. Co.* v. *Superior Court* (1977) 65 Cal.App.3d 751, 756-757 [135 Cal.Rptr. 579]; *Hypolite* v. *Carleson* (1975) 52 Cal.App.3d 566, 582 [125 Cal.Rptr. 221]; *Home Sav. & Loan Assn.* v. *Superior Court* (1974) 42 Cal.App.3d 1006, 1010-1014 [117 Cal.Rptr. 485].) ■ Such issues should not be litigated in the context of a discovery order.

We note the Los Angeles Superior Court Manual for Conduct of Pretrial Proceedings in Class Actions (hereafter referred to as the Los Angeles Manual) sets out an in-depth procedure for the pretrial litigation of issues unique to class actions. The Los Angeles Manual provides for an initial hearing where determinations are to be made as to the suitability of the action as a class action and as to the composition of the class. (Los Angeles Manual, §§ 401, 421, subd. 1, 422, subd. 1, 427.)[1] It is important to observe that the Los Angeles Manual further provides that if the action purports to be brought on behalf of a class which includes residents of states other than California, then the court is to consider *at the initial hearing* whether it has jurisdiction to render a

---

[1]After the party advocating the existence of the class obtains a favorable ruling from the court at the initial hearing, then a second hearing is to be conducted with regard to the appropriate notification that is to be given to the class members. (Los Angeles Manual, § 427, subd. 6.)

Hereafter, unless otherwise indicated, all section references are to the provisions of the Los Angeles Manual.

binding judgment in favor of, or against, nonresident class members and, aside from any possible jurisdictional limitations, whether the court should limit the class to California residents for reasons of public policy and manageability. (§ 427, subds. 1(h) and 3(g).)[2]

In light of the above, the national class action issue is being raised prematurely, and further discovery pertaining to that matter should be allowed.

■ This brings us to Union Mutual's next contention, which is that the work and expense required to answer the Group II and Group III interrogatories is unduly burdensome. In support of this contention, Union Mutual refers to the declaration of one of its officers which states that it will take in excess of 700 hours to obtain the information requested in the Group II interrogatories pertaining to employers in California other than Auto Club; it also is stated in the declaration that it will take in excess of 2,500 hours to obtain the information to answer the Group III interrogatories which relate to nonresident employers.

Much of the expense in answering these interrogatories appears to be attributable to the fact that real party wants the name, address, and telephone number of every person in the country who at any time since January 1, 1969, received disability benefits from Union Mutual under a terminated master agreement identical to the one issued by Union Mutual to Auto Club, and who had those disability benefits reduced because of increases in social security payments. Additionally, real party seeks as to each of these individuals the total number of such reductions, and the date and amount of each reduction.

A considerable part of real party's requested discovery relates to the exact location of potential class members and the issue of the amount of Union Mutual's potential liability. However, it is the standard procedure to litigate class certification issues at a special pretrial proceeding before there is a trial on the issue of the defendant's liability. (*Kass* v. *Young, supra,* 67 Cal.App.3d 100, 105; *Travelers Ins. Co.* v. *Superior Court, supra,* 65 Cal.App.3d 751, 756-757; *Hypolite* v. *Carleson, supra,* 52

---

[2]While it does not appear that respondent superior court has adopted rules similar to those set forth in the Los Angeles Manual, these rules can be used as exemplars of expeditious class action procedures, just as rule 23 of the Federal Rules of Civil Procedure (28 U.S.C.) and the class action provisions of the Consumer Legal Remedies Act (Civ. Code, § 1781) can be so used. (See *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 820-821.)

Cal.App.3d 566, 582; *Home Sav. & Loan Assn.* v. *Superior Court, supra,* 42 Cal.App.3d 1006, 1010-1014.) With this in mind, the Los Angeles Manual provides that, ". . . where discovery on the issue of liability may be expensive and time consuming, a motion may be made limiting discovery to only class issues until an interlocutory order is made concerning those issues." (§ 427, subd. 7(g).)

Again turning to the Los Angeles Manual, we note that issues as to the necessity for and the content of notice to class members should be litigated at a second pretrial hearing only after the party advocating the existence of the class has obtained a favorable ruling from the court at the initial hearing on the issues of the suitability of the action as a class action and of the composition of the class. (§ 427, subd. 6.) At the initial hearing, the court considers, in addition to the jurisdictional questions noted above, such matters as the "*approximate* number of persons in the class," "the *general* geographical location (or locations) of the class members" and "the amount of damages which the representative *estimates* will be awarded to the class." (Italics added.) (§ 427, subd. 1(a) and (b), subd. 5(a).)

With these principles in mind, and taking into consideration both real party's willingness for the time being to accept information limited to persons who presently are receiving disability benefits from Union Mutual under terminated master agreements, and Union Mutual's representation that it can come up with an estimate of the average amount deducted from such benefits because of increases in social security benefits, it appears possible to defer the more expensive discovery called for in interrogatories 23, 24, 27 and 28 until after sufficient information is available to enable respondent superior court to decide the preliminary questions, including jurisdiction.

As to interrogatories 23 and 24, Union Mutual need only supply real party at this time with the approximate number of individuals falling into the class therein described who presently are receiving disability benefits from Union Mutual, the general geographical location (by county) of such individuals, and an estimate of the average amount deducted from the disability benefits of these individuals. As to interrogatories 27 and 28, Union Mutual need only supply real party at this time with the approximate number of individuals falling into the class therein described who presently are receiving disability benefits from Union Mutual, the general geographical location (by state) of such

individuals, and an estimate of the average amount deducted from the disability benefits of these individuals.

We recommend to respondent superior court the pretrial hearing procedures set forth in the Los Angeles Manual as one possible device to avoid imposing the high costs of discovery that may prove to be unnecessary if real party fails to establish preliminarily that a class action is appropriate.

■ As to the $300 sanction imposed by respondent superior court, it would appear that the sanction was inappropriate. The court imposed the sanction as an award of expenses for real party having to obtain an order compelling discovery. However, in granting such expenses, the refusal to make discovery must be "without substantial justification." (Code Civ. Proc., § 2034, subd. (a).) As such, the party obtaining the expenses must demonstrate that the opposing party's objections were insubstantial, were interposed for purposes of delay or harassment, or were otherwise unreasonable. (See 14 Cal. Practice (1972) Discovery Practice, § 865, p. 366.) Due to the rather novel questions presented in this case, it would seem that when tested against these rules the $300 expense sanction was improper.

Let a peremptory writ issue (1) prohibiting respondent superior court from taking further proceedings in Kern County Superior Court action No. 141012 with regard to its discovery order of February 24, 1977, except to modify the discovery order in accordance with the views expressed herein and, if necessary, to enforce the order as so modified, and (2) prohibiting respondent superior court from taking further proceedings in the same action with regard to its order imposing sanctions, except to set aside that order. The parties shall bear their own costs.

Brown (G. A.), P. J., and Hopper, J., concurred.